CARMEN HILLENBRAND *et al.*, Plaintiffs-Appellants, v. MEYER MEDICAL GROUP, S.C., *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—95—3542

Opinion filed May 23, 1997.—Rehearing denied June 25, 1997.

Edelman & Comb, of Chicago (Daniel A. Edelman, James O. Latturner, and Tara L. Goodman, of counsel), for appellants.

. David A. Belofsky & Associates, of Chicago (David Belofsky and Steven R. Shamash, of counsel), for appellee Health Cost Controls of Illinois, Inc.

Winston & Strawn, of Chicago (Kimball R. Anderson and E. King Poor, of counsel), for appellee Meyer Medical Group, S.C.

JUSTICE HOFFMAN delivered the opinion of the court:

The plaintiffs, Carmen Hillenbrand and James G. Uzzell, filed this class action against the defendants, Meyer Medical Group, S.C. (Meyer), Health Cost Controls of Illinois, Inc. (HCC), and Chicago HMO, alleging that Meyer and HCC asserted an invalid and unau-

thorized physician's lien against a third-party recovery received by Hillenbrand. Chicago HMO was dismissed from this action, and the plaintiffs have not appealed from that order. At the hearing on Meyer and HCC's motions for summary judgment, the trial court concluded that the plaintiffs' action was preempted by federal law and entered judgment in favor of Meyer and HCC. Thereafter, the trial court denied the plaintiffs leave to file an amendment to their complaint. The plaintiffs filed the instant appeal from the summary judgment entered in favor of Meyer and HCC and from the trial court's order denying leave to amend. We reverse and remand.

Hillenbrand, as a federal employee, received comprehensive health care benefits under the Federal Employees Health Benefits Act (FEHBA) (5 U.S.C. § 8901 *et seq.* (1994)). Those benefits were administered by the United States Office of Personnel Management (OPM). Pursuant to a contract between OPM and Chicago HMO, Hillenbrand's health care benefits were provided through a Chicago HMO "Prepaid Comprehensive Medical Plan" (Plan). Upon becoming a member of the Plan, Hillenbrand received a brochure from Chicago HMO that contained the following section, entitled "Third Party Actions":

"If a covered person is injured through the act or omission of another, the Plan [Chicago HMO] requires that it be reimbursed for the benefits provided, in an amount not to exceed the amount of the recovery, or that it be subrogated to the person's rights to the extent of the benefits received under this Plan, including the right to bring suit in the person's name."

Since Chicago HMO does not actually provide medical services, it contracts with certain medical groups to perform such services for Chicago HMO Plan members. Chicago HMO and Meyer entered into a medical group service agreement (hereinafter 'Service Agreement') under which Meyer receives "capitation fees" from Chicago HMO instead of billing Chicago HMO's Plan members directly for medical services. Paragraph 5 of the section entitled "Duties of the Group" explains the capitation fee arrangement:

"In no event shall GROUP [Meyer] bill, charge, seek compensation or have any recourse against the Member for service provided pursuant to this Agreement. GROUP agrees to accept as full compensation for providing health services the capitation fees under this Agreement and to look only to the Plan for payment, holding all Members harmless against any monetary claims (except for such co-payments as may be authorized by the applicable Certificate of Coverage)."

The Service Agreement also includes the following pertinent language in paragraph 8 under "General Provisions":

"The GROUP [Meyer] is responsible for ascertaining whether third parties are liable for health services provided to Members by the GROUP. The GROUP is also responsible for collecting any such amounts due from third parties for professional fees, such collections becoming the property of the GROUP."

In February 1991, Hillenbrand was injured in an accident. She received medical treatment from Meyer through her Chicago HMO Plan. The medical services provided by Meyer totaled $1,779.64. In April 1992, HCC, Meyer's agent, sent Hillenbrand's personal injury attorney, James Uzzell, a notice of physician's lien in the amount of $1,779.64, which stated in pertinent part:

"The health benefit plan provides that Meyer Medical Group is entitled to complete reimbursement of those benefits out of any settlement or judgment received by or on behalf of your client from any payments designed to compensate your client for medical expenses and injuries. *** The terms and conditions of the health benefit plan further provide for a legal and equitable lien on any proceeds received by settlement, judgment or otherwise."

In July 1992, Uzzell negotiated a $6,744 settlement of Hillenbrand's tort claim arising from her accident. The settling party remitted one check in the amount of $4,964.36 payable to Hillenbrand and Uzzell, representing her settlement over medical expenses, and another check in the amount of $1,779.64 payable to Hillenbrand, Uzzell, and HCC, representing the amount claimed for reimbursement of her medical expenses. Hillenbrand and Uzzell did not endorse the latter check and, instead, instituted the instant action.

Hillenbrand filed a complaint against Chicago HMO, Meyer, and HCC, alleging that Meyer's physician's lien was invalid because Chicago HMO had already compensated Meyer through the capitation fee provision in the Service Agreement. Thereafter, Hillenbrand filed an amended and second amended complaint. Count I of the second amended complaint presented a claim for unjust enrichment, count III alleged that the defendants' conduct violated the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 et seq. (West 1994)), and count IV alleged common law fraud on the part of the defendants. Count II alleged alternatively that, even if Meyer properly sought reimbursement of the medical expenses, the common fund doctrine required that Meyer bear a proportionate share of Uzzell's fees earned in negotiating a recovery for Hillenbrand.

Meyer, HCC, and Chicago HMO each filed motions to dismiss. Chicago HMO argued that it had not filed a lien, had not sought any third-party recovery or subrogation regarding Hillenbrand's claim,

and, furthermore, had not assigned any rights to do so. The trial court dismissed only Chicago HMO.

Meyer and HCC filed separate motions for summary judgment which argued, among other things, that (1) the plaintiffs' claims were preempted under section 8902(m)(1) of the FEHBA (5 U.S.C. § 8902(m)(1) (1994)), (2) no genuine issue of material fact existed as to Meyer's right of reimbursement under the Service Agreement, and (3) the plaintiffs failed to exhaust their administrative claims. The trial judge concluded that the plaintiffs' claims were preempted under the FEHBA and, accordingly, entered summary judgment in favor of Meyer and HCC. In October 1995, the trial court denied the plaintiffs' motion for leave to file an amendment to their complaint which sought a declaratory judgment as to the validity of Meyer's physician's lien. This appeal followed.

■ Summary judgment is appropriate if the pleadings, depositions, and affidavits show that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *Maher & Associates, Inc. v. Quality Cabinets*, 267 Ill. App. 3d 69, 77, 640 N.E.2d 1000 (1994). A triable issue of fact exists where there is a dispute as to material facts or where the material facts are undisputed but reasonable persons might draw different inferences from those facts. *In re Estate of Hoover*, 155 Ill. 2d 402, 411, 615 N.E.2d 736 (1993). This court reviews a summary judgment *de novo*. *Hoover*, 155 Ill. 2d at 411.

Our review of the record indicates that the trial court's finding that the plaintiffs' claims were preempted was premature since a question of fact remains as to whether the Service Agreement provides Meyer with a right of reimbursement. As previously noted, Chicago HMO is clearly entitled to reimbursement from third-party recoveries received by its Plan members under the "Third Party Actions" provision of its Plan. Since Meyer is not a party to Chicago HMO's contract with Hillenbrand, we must determine whether Chicago HMO assigned its right of reimbursement to Meyer under the Service Agreement. Words that reflect an intent to transfer an actionable right to reimbursement for valuable consideration are sufficient to create an assignment. *Dr. Charles W. Smith III, Ltd. v. Connecticut General Life Insurance Co.*, 122 Ill. App. 3d 725, 727, 462 N.E.2d 604 (1984). Therefore, our determination of whether Chicago HMO assigned its right to Meyer depends on the language of the Service Agreement, specifically, paragraph 8 under "General Provisions."

■ Where a dispute exists between the parties as to the meaning of a contract provision, the threshold issue is whether the contract is

ambiguous. *USG Interiors, Inc. v. Commercial & Architectural Products, Inc.*, 241 Ill. App. 3d 944, 947, 609 N.E.2d 811 (1993). This issue presents a question of law (*United Equitable Insurance Co. v. Reinsurance Co. of America, Inc.*, 157 Ill. App. 3d 724, 728, 510 N.E.2d 914 (1987)) to be decided initially by the trial court from an examination of the instrument as a whole before any extrinsic evidence is considered (*Country Service & Supply Co. v. Harris Trust & Savings Bank*, 103 Ill. App. 3d 161, 165, 430 N.E.2d 631 (1981)). However, because the issue of whether a contract is ambiguous is a question of law, a reviewing court will independently determine the matter unrestrained by the trial court's judgment. *In re Marriage of Arkin*, 108 Ill. App. 3d 103, 108, 438 N.E.2d 957 (1982).

A contract is not ambiguous simply because the parties disagree as to its meaning. *Kokinis v. Kotrich*, 74 Ill. App. 3d 224, 230, 392 N.E.2d 697 (1979), *aff'd*, 81 Ill. 2d 151, 407 N.E.2d 43 (1980). An ambiguity is said to exist when the contract contains language that is susceptible to more than one reasonable interpretation. *Farm Credit Bank v. Whitlock*, 144 Ill. 2d 440, 447, 581 N.E.2d 664 (1991). If, after considering the language of an agreement, a court determines that the document is ambiguous, the court may then look beyond the agreement to ascertain the intent of the parties. *Northern Trust Co. v. Tarre*, 86 Ill. 2d 441, 450, 427 N.E.2d 1217 (1981).

Our examination of the Service Agreement leads us to conclude that it is, indeed, susceptible of more than one reasonable interpretation on the issue of Meyer's right to seek reimbursement for the cost of the medical services rendered to Hillenbrand from the tortfeasor causing her injuries. As stated earlier, paragraph 8 under "General Provisions" in the Service Agreement provides that Meyer "is responsible for ascertaining whether third parties are *liable for health services* provided to [Chicago HMO Plan] Members." (Emphasis added.) Paragraph 8 goes on to provide that Meyer "is also responsible for collecting any such amounts due from third parties for professional fees, such collections becoming the property of" Meyer.

This provision could be interpreted, as Meyer suggests, to mean that Chicago HMO granted Meyer the right to collect and retain any sums due by a tortfeasor for medical services it rendered to a Chicago HMO Plan member, a right possessed by Chicago HMO under the terms of its Plan. The provision could also be interpreted to mean that Meyer is charged with the responsibility of ascertaining if any third party is also obligated to provide health services to a Chicago HMO Plan member and, if so, Meyer can collect and retain any amounts due from such third parties. Both interpretations are reasonable in light of the language employed in the Service Agreement,

and either permits a harmonious construction of all of the terms and conditions of the contract. Obviously, if the latter interpretation comports with the actual intent of Meyer and Chicago HMO at the time that they entered into the Service Agreement, Meyer would only be entitled to seek reimbursement from other health care plans or providers that were also obligated to render medical services to Hillenbrand, and not from a tortfeasor who might be liable for her medical expenses.

Because the Service Agreement is ambiguous on this issue, its interpretation becomes a question of fact, and extrinsic evidence is admissible to explain and ascertain the intention of the parties. See *Farm Credit Bank*, 144 Ill. 2d at 447. In support of their motions for summary judgment, Meyer and HCC submitted the affidavit of Gerald Brown, a former senior vice-president and chief financial officer of HMO America and its wholly owned subsidiary, Chicago HMO. Brown was a signatory to the Service Agreement, and his affidavit was tendered to support the argument that Chicago HMO assigned to Meyer its right to seek reimbursement from a tortfeasor for benefits provided to Chicago HMO Plan members. Brown's affidavit states, in pertinent part:

"If a Member receives a recovery from a third party that caused his or her injury, then, to the extent of any recovery, [Chicago HMO] requires that the Member provide reimbursement for medical services that the Member has received under the Plan. This right of reimbursement is a standard feature in [Chicago HMO] contracts with Enrolling Units. ***

The right of third party reimbursement serves the following purpose. If a Member already received medical care and later receives a recovery from a third party, then the Plan or Plan Providers that have paid for the Member's medical care should be reimbursed from any recovery. ***
***

[Paragraph 8 of the Service Agreement] is intended to allow each Plan Provider, such as Meyer Medical, to exercise the rights of third party reimbursement for covered services under the Plan. This right of reimbursement is part of the compensation that Plan Providers bargain for and is in no way limited by the capitation fee arrangement.
***

*** [Chicago HMO] itself cannot claim reimbursement for medical services that a Plan Provider rendered and/or paid for. Therefore, the Service Agreement (at paragraph 8) gives that authority to the Plan Provider that actually rendered the service."

The defendants also provided the affidavit of Patrick McGinnis, a physician employed by Meyer, which stated in pertinent part:

"The fact that Meyer Medical receives capitation fees as 'full compensation' *** is not contrary to the right of reimbursement. Compensation in the form of capitation fees is a standard feature in HMO agreements. 'Full compensation' here means that Meyer Medical will look to [Chicago HMO] for all its payment and will not turn to the member for additional fees for service. Therefore, in the situation when there is no third party recovery, Meyer Medical receives nothing further. If, however, there is a third party recovery, the Services [sic] Agreement states that Meyer Medical is entitled to reimbursement for the costs of medical care it has provided. Therefore, the right of reimbursement is separate from the right to receive capitation fees."

The plaintiffs submitted evidence contradicting these affidavits. A letter that Meyer received from Philip Armstrong, director of provider relations and development at Chicago HMO, stated:

"Dear Mr. Meyer,

It has come to my attention that Health Cost Controls has been sending notices and correspondence to Chicago HMO Ltd. enrollees indicating that Meyer Medical Group, S.C., has a right to a lien on third party actions pursuant to Chicago HMO Ltd.'s Certificate of Coverage. This is not the case. Chicago HMO Ltd.'s Certificate of Coverage refers only to third party rights regarding the 'Plan' which is defined in the Certificate as 'Chicago HMO Ltd.'', *not* the independent sites who contract with Chicago HMO Ltd.. As you know, Meyer Medical Group and Chicago HMO Ltd. are totally separate and independent entities.

Further, we have no contract with you that assigns Chicago HMO Ltd.'s rights under the Certificate to you. Section 8 of our Medical Group Service Agreement dated January 25, 1988, states that ascertaining and collecting any amounts that might be due from any third parties are your Group's responsibility.

Therefore, please cease immediately from representing to Chicago HMO Ltd. enrollees that you have any such rights under our Certificate of Coverage, and please also inform Health Costs Controls, or any other agents that you might have, to also cease such representations." (Emphasis in original.)

In addition, Marilyn Floyd, senior legal counsel at Chicago HMO, stated in a letter to plaintiff's counsel dated January 5, 1993, that Chicago HMO's Service Agreement does not assign its rights to third-party recovery.

Since neither party presented uncontradicted evidence sufficient for us to determine the meaning of the third-party reimbursement

provisions of the Service Agreement, we conclude that a triable issue of fact exists concerning whether there has been an assignment of reimbursement rights by Chicago HMO to Meyer. Therefore, we reverse the order of summary judgment in favor of the defendants and remand this cause for further proceedings consistent with this opinion.

Given our disposition, we need not reach the additional claims presented on appeal. We wish to emphasize that our analysis does not require recourse to, nor interpretation of, the Chicago HMO contract with Hillenbrand under FEHBA. Rather, we hold only that the question of whether the Service Agreement constituted an assignment to Meyer of Chicago HMO's right to seek reimbursement from the tortfeasor who injured Hillenbrand is the threshold issue that must be resolved in determining the validity of Meyer's physician's lien in this case. Accordingly, we need not reach the preemption issue at this time. See, *e.g., Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 85 L. Ed. 2d 206, 105 S. Ct. 1904 (1985).

Last, we briefly observe that the determination of whether Chicago HMO assigned its right of reimbursement to Meyer is one that affects the rights of Chicago HMO. Given the trial court's dismissal of this necessary party, a joinder problem is potentially presented on remand of this action.

Reversed and remanded.

HARTMAN, P.J., and HOURIHANE, J., concur.