INSTALLCO INCORPORATED, Plaintiff-Appellant, v. WHITING CORP-ORATION, Defendant-Appellee.

First District (5th Division)   Nos. 1—97—2601, 1—98—0656 cons.

Opinion filed June 18, 1999.—Rehearing denied July 21, 1999.

■■■■■■■■■■■■■■■■

Michael W. Rathsack and John B. Ehret, both of Chicago, for appellant.

Kralovec & Marquard, Chartered, of Chicago (William E. Spizzirri, of counsel), for appellee.

JUSTICE HARTMAN delivered the opinion of the court:

Plaintiff, Installco Incorporated (Installco), appeals from orders granting summary judgment to defendant, Whiting Corporation (Whiting), based upon the court's determination that as a matter of law: (1) Installco was not entitled to recover attorney fees, court costs and exemplary damages pursuant to the Sales Representative Act (820 ILCS 120/0.01 *et seq.* (West 1994) (Act) (No. 1—97—2601)); and (2) Installco was not entitled to additional compensation for its nonsales work on a value engineering change proposal (VECP), upon the theory of unjust enrichment (No. 1—98—0656). Installco raises as issues on appeal whether the circuit court erred in (1) granting summary judgment in favor of Whiting and against Installco because it was not a sales representative under the Act; and (2) granting summary judgment in favor of Whiting and against Installco, because Installco's nonsales work on the VECP was within the scope of Installco's existing contractual duties.

On August 7, 1995, Installco filed a verified, two-count complaint against Whiting. The following facts emerge from the pleadings. Prior to 1988, Installco was a government subcontractor, supplying machinery packages for moveable bridges, locks and dams. During 1988, Whiting "invited" Installco to assist Whiting in entering the machinery subcontracting business, relating to bridges, locks and dams. On June 1, 1988, Installco and Whiting entered into a formal agreement prepared by Whiting and signed by Raymond E. Gibson, Whiting's president, and John B. Ehret, Installco's president. Whiting would utilize Installco as a consultant on all bridge, lock and dam projects on an exclusive basis. Installco's "[c]onsulting services [would]

consist of *** assisting Whiting *** in the preparation of quotations, selling, manufacturing, and the purchase of O.S.M. as deemed necessary."

In exchange for Installco's consulting services, Whiting agreed to pay Installco a fee of 5% of the selling price paid on orders received during the term of the agreement, payments to be made as set forth in schedule A, attached to the June 1, 1988, agreement. Installco would not take orders directly for bridges, locks or dams without obtaining Whiting's written consent, and "[e]ach order consummated utilizing the consulting services of Installco [would] designate Whiting *** as the vendor." Finally, the agreement, which was to include locks numbers 21 and 22 and the Bay City, Michigan, bridge, provided that it superseded any previous written or verbal agreements between the parties with respect to the jobs designated in that agreement, as well as all future business, and that the agreement would remain in force until such time as it was terminated by either party. Termination could be initiated by either party with a 60-day written notification of such intent, and all quotations and/or orders in process would be completed, with performance and compensation to be provided as specified in the agreement.

Installco further alleged that a new contract, subsequently entered into by the parties, was prepared by Whiting and signed by Gibson and Ehret on November 20, 1991, and December 11, 1991, respectively. The new agreement modified the original contract by adding the word "engineering" to the list of consulting services Installco would provide Whiting. The payment clause of the original agreement also was modified: for consulting services rendered, Whiting would pay to Installco a fee based on the selling price on orders received during the term of the agreement and that the amount and the timing of the payment of the fee would be based on schedules A and B, which were attached thereto. Different percentages were to be paid for each separate project. Any on-site work performed by Installco was separately compensable. "Selling price" was defined by the agreement as the amount of the customer's order, exclusive of erection, erection supervision, freight, royalties, canceled orders or returned goods, taxes, escalation, commissions and fees. Also added were the following provisions: Installco could bid on any contract in any state which Whiting had not bid on when Whiting was notified by Installco in writing and in advance of the bid date. Whiting reserved the right to negotiate the selling price and total fee, correspondingly, on any job whenever it decided that competitive pressures demanded it. The agreement was

to become effective when signed by both parties.[1] Installco was to be paid full fees on orders received under the agreement according to schedules A and B, upon termination by either party.

Installco asserts that it terminated its contract with Whiting in writing, signed by Ehret, and dated February 5, 1994; in that letter, Installco demanded the payment of commissions as provided under contract in schedule B, and sections 1, 2, and 3 of the Act. Installco alleged that the commissions totalling $31,789 were shown on exhibit C and that the corresponding shipments had been completed for more than one year. The commission fee agreement set forth in schedule B, which was attached to exhibit B, provided that "[a]ll undisputed fees will be paid within one (1) year of final shipment." Installco alleged that despite the fact the commissions shown were due, Whiting tried to deceive Installco into an accord and satisfaction in its November 8, 1994, letter, by refusing to pay the amount shown above unless Installco accepted $20,621.90 in total settlement. Accordingly, Installco asserts that Whiting had breached their agreement. In addition to the unpaid commissions, Installco seeks an award of attorney fees, court costs, and exemplary damages under the Act.

Installco also claims that the contractual agreement between the parties did not require it to make VECPs on subcontracts. Installco succeeded in winning a VECP (subject VECP), resulting in a substantial profit to Whiting, which contributed nothing to the effort. Consequently, Installco also brings an unjust enrichment claim against Whiting for the profits and benefits obtained by Whiting from the subject VECP.

## I

Installco first contends that the circuit court erred in granting summary judgment to Whiting on count I of its complaint, based on the court's determination that, as a matter of law, Installco was not a sales representative pursuant to the Act and, therefore, could not recover attorney fees, court costs and exemplary damages, for breach of contract.

■ Summary judgment is properly granted where the pleadings, depositions, admissions on file and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005 (West 1996); *Mobil Oil Corp. v. Maryland Casualty Co.*, 288 Ill. App. 3d 743, 751, 681

---

[1]Installco's complaint appears to allege that the new agreement went into effect on November 20, 1991, the date it was signed by Gibson; it did not actually become effective, by its own terms, until December 11, 1991, the date on which Ehret signed the agreement.

N.E.2d 552 (1997) (*Mobil*); *Maher & Associates, Inc. v. Quality Cabinets*, 267 Ill. App. 3d 69, 77, 640 N.E.2d 1000 (1994) (*Maher*). The movant's right must be clear and free from doubt; the motion must be strictly construed against the movant. *Kleinwort Benson North America, Inc. v. Quantum Financial Services, Inc.*, 285 Ill. App. 3d 201, 208-09, 673 N.E.2d 369 (1996), *aff'd*, 181 Ill. 2d 214, 692 N.E.2d 269 (1998); *Maher*, 267 Ill. App. 3d at 77.

■ A genuine issue of material fact exists when a material provision of a contract contains an ambiguity requiring extrinsic evidence to resolve. *Maher*, 267 Ill. App. 3d at 77. Whether such ambiguity exists is a question of law for the circuit court to decide; if reasonable persons could draw different inferences from the undisputed facts, summary judgment is inappropriate and the matter should proceed to trial. *Maher*, 267 Ill. App. 3d at 77.

Since this case is an appeal from orders granting summary judgment without credibility issues, this court's review is *de novo*. *Mobil*, 288 Ill. App. 3d at 751; *English Co. v. Northwest Envirocon, Inc.*, 278 Ill. App. 3d 406, 410, 663 N.E.2d 448 (1996).

In the instant case, the circuit court concluded that Whiting was entitled to summary judgment based on its determination that Installco and Whiting were joint venturers as a matter of law. Installco argues, however, that summary judgment was inappropriate because there exists a triable question of fact as to whether Installco was a sales representative, rather than a joint venturer with Whiting, so that the Act would apply and provide Installco with its protections and benefits.[2]

■ Construction of the Act requires the ascertainment of its true

<hr>

[2]Section 1 of the Act provides in its entirety as follows:

"As used in this Act: (1) 'Commission' means compensation accruing to a sales representative for payment by a principal, the rate of which is expressed as a percentage of the dollar amount of orders or sales or as a percentage of the dollar amount of profits.

(2) When a commission becomes due shall be determined in the following manner:

(A) The terms of the contract between the principal and salesperson shall control;

(B) If there is no contract, or if the terms of the contract do not provide when the commission becomes due, or the terms are ambiguous or unclear, the past practice used by the parties shall control;

(C) If neither (A) nor (B) can be used to clearly ascertain when the commission becomes due, the custom and usage prevalent in this State for the parties' particular industry shall control.

meaning and the intent of the legislature. *Maher*, 267 Ill. App. 3d at 75. The statutory language is generally the best indicator of legislative intent. *Maher*, 267 Ill. App. 3d at 75. When the language of a statute is clear, it will be given its clearly understood meaning without resort to other construction aids (*Maher*, 267 Ill. App. 3d at 75); however, where the meaning is unclear, the court may look beyond the statutory language and consider the purpose behind the law and the evils the law was designed to remedy (*English Company*, 278 Ill. App. 3d at 412).

Installco argues that facts exist in this case which support a finding that it was Whiting's sales representative, based upon the following: (1) the contract itself reveals that Installco was to render consulting services, which included the preparation of quotations to be used

(3) 'Principal' means a sole proprietorship, partnership, corporation or other business entity whether or not it has a permanent or fixed place of business in this State and which:

(A) Manufactures, produces, imports, or distributes a product for sale;

(B) Contracts with a sales representative to solicit orders for the product; and

(C) Compensates the sales representative, in whole or in part, by commission.

(4) 'Sales representative' means a person who contracts with a principal to solicit orders and who is compensated, in whole or in part, by commission, but shall not include one who places orders or purchases for his own account for resale or one who qualifies as an employee of the principal pursuant to the Illinois Wage Payment and Collection Act." 820 ILCS 120/1 (West 1994).

Section 2 of the Act states:

"All commissions due at the time of termination of a contract between a sales representative and principal shall be paid within 13 days of termination, and commissions that become due after termination shall be paid within 13 days of the date on which such commissions become due. Any provision in any contract between a sales representative and principal purporting to waive any of the provisions of this Act shall be void." 820 ILCS 120/2 (West 1994).

Section 3 of the Act provides:

"A principal who fails to comply with the provisions of Section 2 concerning timely payment or with any contractual provision concerning timely payment of commissions due upon the termination of the contract with the sales representative, shall be liable in a civil action for exemplary damages in an amount which does not exceed 3 times the amount of the commissions owed to the sales representative. Additionally, such principal shall pay the sales representative's reasonable attorney's fees and court costs." 820 ILCS 120/3 (West 1994).

in making job bids and selling; (2) it could not take any direct action with respect to accepting bids on Whiting's behalf; (3) Installco was to be paid a fixed percentage of the sales price of the machinery, but only if a sale was made; (4) the record contains the documents of some of the equipment sales Installco made on behalf of Whiting; (5) Ehret, the majority owner and sole employee of Installco, described in his affidavit the nature of Installco's sales efforts on Whiting's behalf; (6) Installco did Whiting's selling from 1988 through January 1994; (7) Ehret met and socialized with the general contractors, who were potential customers; and (8) Installco bid on behalf of Whiting about 200 times during that six-year period, "achiev[ing] great success for Whiting promotionally or sales-wise" and obtaining for Whiting, which had no prior bridge machinery experience, "national recognition overnight."

Installco argues that the circuit court ignored the foregoing facts and instead relied heavily on a memorandum (subject memorandum) Ehret wrote in 1989, near the inception of the relationship between Installco and Whiting. The subject memorandum, Installco asserts, was written during the course of exploring whether certain United States Corps of Engineer (USCOE) forms had to be marked in a particular fashion with regard to the nature of Installco's work on Whiting projects, and reflected experiences between the two companies at a time when Whiting suddenly was faced with a large volume of machinery business with which it was unfamiliar. Installco urges that the meaning of the subject memorandum language is open to question, and its interpretation is more appropriate for a trier of fact. Even if the language were to be deemed an admission relevant to its 1994 complaint, then it would be substantive evidence, which would affect only the weight of any contrary evidence.

The history of the subject memorandum appears to be as follows. In 1989, a question arose as to how USCOE would view Installco's role at Whiting. Ehret addressed the matter in the hand-written subject memorandum to Whiting's Al Burke and Hank Lee. The caption of Ehret's memorandum, dated September 27, 1989, stated that it was in regard to "contingent fees or joint ventures." There, Ehret stated in relevant part:

> "I view the relationship between Whiting and Installco as a joint venture with payments by *** [USCOE] to be split on a 95%-5% basis.
>
> * * *
>
> *** [M]y activities on a percentage of time basis are far more related to, engineering, manufacturing, field problem analysis, estimating, purchasing, training, maintenance manual preparation etc. than to so called sales promotion."

With regard to Whiting's offer of evidence showing Ehret's involvement in areas of work other than sales, Installco urges that whether those efforts by him removed Installco from the status of sales representative is a question of fact where, aside from its claim for separate compensation in count II, Installco was paid only commissions on the sales it made.

Installco argues that the facts of this case do not establish a joint venture as a matter of law, where there was no single enterprise or transaction, and profits had nothing to do with the economic obligations between the parties. Installco further asserts that the circuit court's finding, that the Act was intended only to protect solo "wholesale sales representatives," was unfounded, based on the 1993 amendment to the Act, which deleted all references to "wholesale."

Whiting counters that Installco should be estopped from raising this argument, where it is professionally inappropriate and legally repugnant for Ehret to provide legal advice to Whiting in 1989 and then later file suit on behalf of his own company, disputing that same legal advice. The record reveals no agreement that Ehret would act as Whiting's lawyer, or that Whiting reasonably could expect or rely upon Ehret's legal advice, or that legal services were to be provided by Ehret to Whiting as part of the existing agreements. Whatever may have been inappropriate or repugnant insofar as Ehret's legal conduct is concerned, Ehret's action does not govern the outcome of the instant controversy as a matter of law. Rather, the import of his memorandum is susceptible to interpretation and explanation in view of the parties' ongoing relationship and history.

■ Based upon the foregoing, the circuit court should have denied summary judgment to Whiting, since these questions must be considered in context with the relationship of the parties during their transactional history; they raise issues of triable, material fact and are not amenable to summary judgment disposition.

## II

■ Installco next contends that the circuit court erred in granting summary judgment to Whiting on count II of Installco's complaint, based on its determination, as a matter of law, that Installco's work on the subject VECP was not beyond the scope of its contractual duties, thereby denying Installco the additional compensation it sought in its unjust enrichment count. Installco asserts that there is a question of fact as to whether its work on the subject VECP, which benefitted Whiting, was beyond the scope of Installco's contractual duties, thereby entitling it to additional compensation. Whiting submits that Installco would be obtaining a windfall if given the additional

compensation Installco seeks. This work consisted of Installco's suggested engineering design change in the lubrication system at the Bonneville project, which resulted in significant cost savings to Whiting.

Installco's complaint reveals that the parties first entered into a formal, written agreement in 1988. That contract contained a list of consulting services with which Installco would assist Whiting. Noticeably absent from that list is the term "engineering," which subsequently appears in the list of consulting services set forth in the parties' 1991 contract. Installco alleges in count II that the parties' contractual agreements did not "cover a requirement that Installco make Value Engineering Cost Proposals on subcontracts," and further alleges that it succeeded in winning this VECP, which was successfully quoted on February 16, 1990, before the 1991 amendments. Whiting, on the other hand, argues that Installco's position is contrary to its claim that its primary role was that of sales representative, as well as being contrary to Ehret's legal advice to Whiting'in 1989, and the 1988 contract that required Installco to assist Whiting throughout the project and the course of conduct between the parties.

The 1988 contract, in effect at the time Installco performed the subject VECP services, did not include engineering services, as above noted. The circuit court apparently adopted Whiting's description of Installco's duties, particularly those set forth on form SF119, filed by Whiting with the federal government, discussing the nature of its business associates' work. The record reveals, however, that Installco's services on the subject VECP work, and the USCOE's approval of that work, came before the SF119 description. This raises an additional question of fact, not subject to summary judgment, as to whether Whiting was unjustly enriched by refusing to compensate Installco for its subject VECP work. *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 160, 545 N.E.2d 672 (1989); *Cannella v. Village of Bridgeview*, 284 Ill. App. 3d 1065, 1075, 673 N.E.2d 394 (1996); *Gaslite Illinois, Inc. v. Northern Illinois Gas Co.*, 46 Ill. App. 3d 917, 924, 362 N.E.2d 725 (1976).

Entry of summary judgment under the circumstances that have been set forth above was in error, and the judgment must be reversed. The cause is remanded for trial.

Reversed and remanded with directions.

HOURIHANE, P.J., and THEIS, J., concur.