INSTALLCO, INCORPORATED, Plaintiff-Appellant and Cross-Appellee, v. WHITING CORPORATION, Defendant-Appellee and Cross-Appellant.

First District (4th Division)   No. 1—02—0244

Opinion filed December 26, 2002.

John B. Ehret, of Olympia Fields, for appellant.

Kralovec & Marquard, Chtrd., of Chicago (William E. Spizzirri, of counsel), for appellee.

JUSTICE HARTMAN delivered the opinion of the court:

Plaintiff, Installco, Incorporated (Installco), filed a two-count complaint against defendant, Whiting Corporation (Whiting). Count I sought contract damages for nonpayment of commissions on four construction projects, an accounting, and exemplary damages, costs and attorney fees pursuant to the Sales Representative Act (the Act) (820 ILCS 120/1 *et seq.* (West 2000)). Count II sought *quantum meruit* compensation for a value engineering change proposal (VECP), which was done in connection with the Bonneville Dam project. This court previously reversed the circuit court's grant of summary judgment in favor of Whiting and remanded for further proceedings. See *Installco Inc. v. Whiting Corp.*, 305 Ill. App. 3d 986, 713 N.E.2d 719 (1999) (*Installco I*). On remand, following a bench trial, the circuit court entered judgment in favor of Whiting and against Installco on the *quantum meruit* claim. The court further granted judgment in favor of Whiting and against Installco under count I on Installco's claim for an accounting, exemplary damages, freight charges, and commissions. Judgment was entered in favor of Installco, however, on Installco's claim for attorney fees and costs under count I.

On appeal, Installco contends that the circuit court erred in: (1) granting judgment in favor of Whiting on Installco's claim for *quantum meruit*; (2) finding that Installco's waiver of the $31,500 commission on the Midwest Foundation Dam 18 project (Midwest Foundation project) was enforceable; (3) finding that Installco was not entitled to commission on freight costs under the 1988 agreement; (4) denying Installco's request for exemplary damages under the Act; and (5) denying Installco's request for a jury trial. Installco also contends that it was not compensated adequately for its attorney fees under the Act. Whiting filed a cross-appeal from the court's award of attorney fees in

favor of Installco contending that the court erred in rejecting Whiting's affirmative defense that Installco be estopped from contending that it was acting in the capacity of a sales representative for Whiting.

Prior to 1988, Installco was a government subcontractor, supplying machinery packages for moveable bridges, locks, and dams. John B. Ehret was the principal shareholder and sole officer of Installco. Ehret is also a licensed attorney and has represented Installco throughout its dealings with Whiting and in this litigation. Whiting engages in the manufacturing of heavy industrial equipment. On June 1, 1988, Installco and Whiting entered into a written contract (the 1988 agreement) which provided that Whiting would utilize Installco as a consultant on all bridge, lock, and dam projects on an exclusive basis. Installco's "[c]onsulting services [would] consist of *** assisting Whiting *** in the preparation of quotations, selling, manufacturing, and the purchase of O.S.M.[1] as deemed necessary by the product group manager."

In exchange for Installco's consulting services, Whiting agreed to pay Installco a fee of 5% of the selling price paid on orders received during the term of the 1988 agreement, payments to be made as set forth in schedule A, attached to the 1988 agreement. Schedule A provided that Installco would be paid 10% of its fee 30 days after Whiting confirmed an order and the next 40% after Whiting collected at least 50% of the selling price. The final 50% was to be paid after Whiting received 100% of the selling price. The 1988 agreement by its terms provided that it superseded any previous written or verbal agreements between the parties.

In 1990, Installco requested that Whiting modify the 1988 payment schedule to provide that the final 50% of the Installco fee would be paid in the same proportion as Whiting was paid by the customer. In an internal Whiting memo dated October 30, 1990 (the 1990 memo), Whiting agreed to the accelerated payments on orders then in existence in exchange for Installco waiving its $31,500 commission on the Midwest Foundation project. Charles Bailey, a Whiting employee, testified that the 1990 memo applied only to projects that fell under schedule A of the 1988 agreement where 50% had not yet been paid by the customer, so Whiting was holding back compensation to Installco. Jeffrey L. Kahn, president of Whiting, testified that the 1990 memo applied to old jobs where 50% of the commission was being held.

The parties entered into a new contract, effective December 11, 1991 (the 1991 agreement). The 1991 agreement provided that it

---

[1]Outside materials.

"supersedes any previous written or verbal agreements between the parties." The 1991 agreement added the word "engineering" to the list of consulting services Installco would provide Whiting. The 1991 agreement also added a definition of "selling price" which excluded all freight, established a new fee structure as set forth in a new schedule A attached thereto, and changed the timing for payment of the final 50% of Installco's fee as set forth in schedule B attached thereto, which adopted the accelerated payments contemplated by the 1990 memo.

Both the 1988 agreement and the 1991 agreement provided for termination by either party on 60 days' written notice. By letter dated February 5, 1994, Installco terminated the 1991 agreement and demanded payment of commissions, including $2,640 for the Bay City Bridge project; $9,446 for the Bulk Head Lifter project; $10,577 for the New York City Bridges project; $9,126 for the Mississippi River Dam 16 project; and $22,417 for the VECP. After receipt of the termination letter, Whiting prepared and sent to Installco a payments analysis dated February 23, 1994, which substantially agreed with Installco's claims except as to commissions on freight and the VECP claim. Whiting made several conditional tenders which were rejected. Whiting made an unconditional tender of all commissions due Installco on January 10, 1996, in the amount of $30,154.74. Installco accepted that payment in August 1997.

On August 21, 2000, Installco filed its first-amended complaint adding allegations in count I that Installco was entitled to $10,000 in commissions on freight charges and $31,500 in commissions on the Midwest Foundation project.

The parties agree that all commissions have been paid in full except for Installco's claims for: (1) commissions on freight; (2) commissions on the Midwest Foundation project; and (3) $22,417 for the VECP.

Installco's original complaint included a jury demand on the legal issues. Upon remand following this court's decision in *Installco I*, Installco moved unsuccessfully for a substitution of judge and "reassignment to another Trial Judge with a JURY." Installco also unsuccessfully moved to transfer this cause to the law division for a jury trial.

Following the bench trial, the circuit court issued a memorandum order and opinion, granting judgment in favor of Whiting and against Installco on the *quantum meruit* claim. The court further granted judgment in favor of Whiting and against Installco under count I on Installco's claim for an accounting, exemplary damages, freight charges, and commissions. The court granted judgment in favor of Installco, however, on Installco's claim for attorney fees and costs under

count I. At a separate hearing on attorney fees, the court awarded Installco $8,400 in attorney fees and $274 in costs. Whiting moved unsuccessfully for a finding that Installco be estopped from seeking any relief under the Act. Whiting also moved unsuccessfully for reconsideration.

In a bench trial, the circuit court must weigh the evidence and make findings of fact. A reviewing court will not disturb the court's findings unless they are against the manifest weight of the evidence. *Eychaner v. Gross*, 202 Ill. 2d 228 (2002) (*Eychaner*). The court's conclusions of law are reviewed *de novo. Eychaner*, 202 Ill. 2d at 251-52.

## I

Installco first contends that the circuit court erred in granting judgment in favor of Whiting on its claim for *quantum meruit*. Specifically, Installco argues that the court erred in finding that the VECP services were rendered under the 1988 agreement.

■ To recover under a *quantum meruit* theory, the plaintiff must prove that: (1) he performed a service to benefit the defendant, (2) he did not perform this service gratuitously, (3) defendant accepted this service, and (4) no contract existed to prescribe payment for this service. *Canel & Hale, Ltd. v. Tobin*, 304 Ill. App. 3d 906, 710 N.E.2d 861 (1999). "Where services are rendered under an express contract, there can be no quasi-contractual recovery." *Barry Mogul & Associates, Inc. v. Terrestris Development Co.*, 267 Ill. App. 3d 742, 643 N.E.2d 245 (1994) (*Barry Mogul*). No quasi-contractual claim can arise when a contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests. *Barry Mogul*, 267 Ill. App. 3d at 750.

■ In the present case, the VECP services were rendered under an express contract. The 1988 agreement provided that Installco would act as a consultant and such consulting services would include assisting Whiting in "the preparation of quotations, selling, manufacturing, and the purchase of O.S.M." Kahn testified that from the beginning of Installco's formal relationship with Whiting, Ehret represented his engineering expertise and how it could help Whiting. The record reveals that Installco did not engage in direct selling activities with respect to the Bulkhead Lifter project and the Picone Bridge project; but instead provided engineering-related services to assist in the application engineering, preparation of drawings, review of technical literature, pricing, and preparation of the bid packages on those two projects. Installco was paid a full commission on both projects. Henry Lee, a Whiting employee, testified that 95% of Installco's activities at

Whiting were nonsales. Lee also stated that it was customary for Ehret to provide technical information and assistance to customers. The record includes several examples of such correspondence. All services rendered by Installco on the Bonneville Dam project, including the VECP, were rendered under the 1988 agreement.

The circuit court did not err in granting judgment in favor of Whiting on Installco's claim for *quantum meruit*.

## II

■ Installco next contends that the circuit court erred in finding that its waiver of the $31,500 commission on the Midwest Foundation project was enforceable. Installco admitted during oral argument that it agreed to waive the $31,500 commission in exchange for accelerated payments on other commissions. Installco argues that there was no evidence that Whiting honored its part of the agreement to make accelerated payments and, because of this alleged breach, the waiver is not enforceable. Installco provides no authority in support of this argument.

Installco points to the testimony of several Whiting employees in support of its contention that Whiting never implemented the 1990 memo. Catherine Collins, treasurer of Whiting, stated that she did not remember receiving the 1990 memo, but as per her standard practice she would have forwarded it to Angela Stack for processing and handling. Stack testified that she did not recall seeing the 1990 memo and that Collins would have handled it. Alan Burke testified that he did not know if the 1990 memo had been implemented. Bailey, the author of the memo, testified that he did not have any conversations with Collins regarding implementation of the memo and did not know for sure whether it was implemented. Kahn testified that he was not sure whether the 1990 memo was ever implemented, but "it looks like it was based on the memo."

Other than the $2,650[2] commission on the Bay City Bridge project (Bay City Bridge commission), Installco failed to demonstrate by record evidence what, if any, accelerated commission payments due under the 1990 memo were not paid on a timely basis.

With regard to the Bay City Bridge commission, the circuit court correctly found that there was no failure of consideration or material breach on the part of Whiting. The Bay City Bridge commission was a negligible percentage of the $350,373 in total commissions paid to Installco. Whiting admitted that the Bay City Bridge commission "slipped through the cracks" because the project mistakenly had been

---

[2]Whiting contends that the commission was $2,450, the difference reflecting freight costs.

assigned two requisition numbers. Whiting acknowledged the oversight in its February 23, 1994, response to Installco's termination letter and tender was made.

The circuit court did not err in finding that Installco's waiver of the $31,500 commission on the Midwest Foundation project was enforceable.

## III

Installco next contends that the circuit court erred in finding that it was not entitled to commissions on freight costs under the 1988 agreement.

■ The principal purpose in construing a contract is to ascertain and give effect to the parties' intent at the time they entered into the contract. *Shields Pork Plus, Inc. v. Swiss Valley Ag Service*, 329 Ill. App. 3d 305, 767 N.E.2d 945 (2002) (*Shields Pork*). Where a dispute exists between the parties as to the meaning of a contract provision, the threshold issue is whether the contract is ambiguous. *Hillenbrand v. Meyer Medical Group, S.C.*, 288 Ill. App. 3d 871, 682 N.E.2d 101 (1997) (*Hillenbrand*). This issue presents a question of law to be decided by the circuit court from an examination of the instrument as a whole before any extrinsic evidence is considered. *Hillenbrand*, 288 Ill. App. 3d at 876. A reviewing court will independently determine the matter unrestrained by the circuit court's judgment, in the manner of a *de novo* review. *Shields Pork*, 329 Ill. App. 3d at 311. A contract is not ambiguous simply because the parties disagree as to its meaning. *Hillenbrand*, 288 Ill. App. 3d at 876. "A contract is ambiguous where the language employed is susceptible to more than one reasonable meaning or obscure in meaning through indefiniteness of expression." *Countryman v. Industrial Comm'n*, 292 Ill. App. 3d 738, 741, 686 N.E.2d 61 (1997).

■ The term "selling price" in the 1988 agreement is ambiguous, as it is not clear whether the term includes freight.

Installco further argues that if the term "selling price" was ambiguous, the circuit court's finding that the parties did not intend the term to include freight was against the manifest weight of the evidence. If contract language is ambiguous, extrinsic evidence is admissible to determine the parties' intent and interpretation of the language is a question of fact. *Bradley Real Estate Trust v. Dolan Associates, Ltd.*, 266 Ill. App. 3d 709, 640 N.E.2d 9 (1994) (*Bradley*). The circuit court's determination of the intent of the parties will not be disturbed on review unless it is contrary to the manifest weight of the evidence. *Bradley*, 266 Ill. App. 3d at 712.

Lee testified that freight was not included in the selling price for

purposes of determining Installco's compensation. Lee identified a commission calculation sheet he prepared in 1990, which indicated a subtraction from the selling price of $20,000 for freight. The sheet was not signed by Ehret but included a notation that Ehret had seen it and approved it. Finally, Lee testified that by late 1988 or early 1989 when the first commissions were paid, Installco was aware of Whiting's position that "selling price" was minus freight.

The circuit court's determination that freight costs were not included in Installco's commissions under the 1988 agreement was not against the manifest weight of the evidence.

## IV

Installco next contends that the circuit court erred in denying its request for exemplary damages under the Act.

■ Section 3 of the Act provides in pertinent part that "[a] principal who fails to comply with the provisions of Section 2 concerning timely payment or with any contractual provision concerning timely payment of commissions due upon the termination of the contract with the sales representative, shall be liable in a civil action for exemplary damages in an amount which does not exceed 3 times the amount of the commissions owed to the sales representative." 820 ILCS 120/3 (West 2000). No automatic award of exemplary damages is granted for every violation of the Act. *Maher & Associates, Inc. v. Quality Cabinets*, 267 Ill. App. 3d 69, 640 N.E.2d 1000 (1994) (*Maher*); *Zavell & Associates, Inc. v. CCA Industries, Inc.*, 257 Ill. App. 3d 319, 628 N.E.2d 1050 (1993) (*Zavell*). The court's decision as to whether to grant exemplary damages, or not, will not be disturbed absent an abuse of discretion. *Zavell*, 257 Ill. App. 3d at 322.

■ In *Maher*, the court noted that the purpose of exemplary damages is to punish the offender and to deter that party and others from committing similar acts of wrongdoing in the future. Such damages should not be awarded absent a finding of "culpability that exceeds bad faith." *Maher*, 267 Ill. App. 3d at 80. The court held that on remand, the plaintiff would be entitled to exemplary damages only if it could demonstrate that the defendant's behavior in withholding the commissions beyond the statutory period "was outrageous and the moral equivalent of criminal conduct." *Maher*, 267 Ill. App. 3d at 81. See also *Zavell*, 257 Ill. App. 3d at 322 ("The standard for awarding such damages is willful and wanton conduct or vexatious refusal to pay").

■ The record reveals that although some commission payments were not timely made, Whiting's conduct was not outrageous or the moral equivalent of criminal conduct. Whiting issued a timely and

comprehensive written response to Installco's termination letter which indicated what commissions presently were due and what amounts would be due in the future. Whiting made several conditional and unconditional tenders of amounts due, which Installco rejected. Kahn testified that when Whiting sent its response to Installco's termination letter, it was willing to pay Installco the amounts that were then owed and any future amounts that became due under schedules A and B of the 1991 agreement. Kahn met with Ehret in September 1994 to discuss Installco's issues regarding payment of commissions. This conduct cannot be characterized as wilful and wanton or vexatious.

The circuit court did not abuse its discretion in denying Installco's request for exemplary damages.

## V

■ Installco next contends that the circuit court erred in denying its request for a jury trial. Specifically, Installco argues that a proper jury demand was filed with the original complaint and that this is a contract dispute involving legal issues.

Installco's contention ignores the equitable nature of the relief sought under both counts of the first-amended complaint, which caused the issues to be decided in chancery. Both counts sought an accounting, an equitable remedy. See *Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33, 643 N.E.2d 734 (1994) (*Martin*) (holding that actions to impose a constructive trust and for an accounting are equitable claims). Count II requested relief under the equitable theories of *quantum meruit* and unjust enrichment. See *Owen Wagener & Co. v. U.S. Bank*, 297 Ill. App. 3d 1045, 697 N.E.2d 902 (1998). Also, Installco moved for substitution of judge and reassignment to another trial judge with a jury and to transfer this cause to the law division for a jury trial. In its motion to transfer, Installco argued that "there are questions of a constructive trust."

Further, as to count I, there is no right to a jury trial under the Sales Representative Act (the Act) (820 ILCS 120/1 *et seq.* (West 2000)). The right to a jury trial does not attach to every action at law. *Martin*, 163 Ill. 2d at 73. The constitutional right to trial by jury does not extend to actions unknown at common law. *Martin*, 163 Ill. 2d at 73-74. In *Martin*, the court found that there was no right to a jury trial under the Consumer Fraud and Deceptive Business Practices Act (the Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2000)). Noting the differences between the elements of a claim for common law fraud and the elements for recovery under the Consumer Fraud Act, the court found that the Consumer Fraud Act was a statutory enactment that created a new cause of action unknown at common law. The court also

noted that the Consumer Fraud Act did not expressly provide for jury trials.

In the present case, Installco received and accepted its contract damages prior to trial and was seeking to impose only attorney fees, expenses and punitive damages for breach of contract under the Act. The parties agree that all commissions were paid in full prior to trial except for commissions on freight and commissions on the Midwest Foundation Dam 18 project. Fees, expenses, and punitive damages are not recoverable at common law for breach of contract. See *Cirrincione v. Johnson*, 184 Ill. 2d 109, 703 N.E.2d 67 (1998) (noting that, generally, punitive damages are not recoverable for breach of contract); *Johnson v. Human Rights Comm'n*, 173 Ill. App. 3d 564, 527 N.E.2d 883 (1988) (absent a statute or contract provision specifically providing for assessment of attorney fees and costs, each party is responsible for its own costs of litigation). The Act does not expressly provide for jury trials. Analogous to the Consumer Fraud Act, it is a statutory enactment that created a new cause of action unknown at common law. Consequently, there is no right to a jury trial under the Act.[3]

Finally, a party may, by its conduct, waive its demand for a jury trial. *Bevins v. Comet Casualty Co.*, 71 Ill. App. 3d 758, 390 N.E.2d 500 (1979); *LaSalle National Bank v. International Ltd.*, 129 Ill. App. 2d 381, 398, 263 N.E.2d 506 (1970) ("It has long been the law that the right to a trial by jury may be waived by a party proceeding to trial before the court without objection."); *Williams v. Frank*, 85 Ill. App. 2d 85, 229 N.E.2d 408 (1967) (holding that plaintiff waived his jury demand by proceeding to trial before the court without a jury). Installco's motions for substitution of judge and reassignment to another trial judge with a jury and to transfer this cause to the law division for a jury trial were denied 11 months and 8 months prior to trial. Installco did not again raise the issue of a jury trial until its opening brief in this appeal. Ehret admitted during oral argument that he did not object at the outset of the bench trial to proceeding without a jury. Installco cannot sit by silently, allowing a full bench trial to proceed

---

[3]With regard to jury trials under the Act, Installco cites three cases. *Twin-City Inn, Inc. v. Hahne Enterprises, Inc.*, 37 Ill. 2d 133, 225 N.E.2d 630 (1967), involved the forcible entry and detainer act, which unlike the Act, expressly provided for jury trials. In *Dawson v. W.&H. Voortman, Ltd.*, 864 F. Supp. 77 (N.D. Ill. 1994), the court found that the Act does not impose a statutory penalty for purposes of determining the proper statute of limitations. The court did not address whether there was a right to a jury trial under the Act or not. *Federal Deposit Insurance Corp. v. W.R. Grace & Co.*, 877 F.2d 614 (7th Cir. 1989), did not involve the Act.

and then, unhappy with the result, argue on appeal that the matter should have been heard by a jury. Installco, by its conduct, waived its jury demand.

The circuit court did not err by denying Installco a jury trial.

## VI

•■ Lastly, Installco contends that it was not compensated adequately for its attorney fees under the Act. Specifically, Installco argues that "if this court agrees wholly or in part with [Installco], [Installco] is entitled to all its legal fees." In light of the disposition of Installco's other issues, this issue is without merit.

## CROSS-APPEAL

## I

■ On cross-appeal Whiting contends that the judgment awarding Installco attorney fees under the Act should be vacated. Whiting does not dispute the adequacy of the record to support the court's finding that Installco acted as a sales representative, but argues that Installco should have been estopped from contending that it was acting in the capacity of a sales representative for Whiting.

Whiting first suggests that estoppel should be applied based on the "uncontradicted evidence" that Ehret provided legal advice to Whiting, which is inconsistent with the positions advanced by Installco in this lawsuit. Specifically, Ehret advised Whiting in a 1989 memorandum that he considered the relationship between Installco and Whiting to be a joint venture rather than a contingent fee situation. Although this opinion might be characterized as a legal opinion, there is no evidence that Ehret was retained by Whiting to render legal advice.

Whiting further argues that Installco should be estopped from asserting its status under the Act because of a judicial admission made by Ehret in his deposition. A judicial admission is a deliberate, clear, unequivocal statement of a party about a concrete fact within that party's peculiar knowledge. *Hansen v. Ruby Construction Co.*, 155 Ill. App. 3d 475, 508 N.E.2d 301 (1987) (*Hansen*). Judicial admissions may be made during discovery depositions. *Van's Material Co. v. Department of Revenue*, 131 Ill. 2d 196, 545 N.E.2d 695 (1989).

In his discovery deposition, Ehret defined a "manufacturer's rep" as someone who "usually has a contract to sell certain products, but those products are ordinarily manufactured in a remote location at the manufacturer's factory and shipped from the manufacturer to the customer direct. And the rep is paid a commission on shipments." Whiting argues that this definition is consistent with the definition of

"sales representative" in the Act.[4] When asked if he ever functioned as a "manufacturer's rep" for Whiting through Installco, Ehret stated "[n]o, not to my knowledge, not that I can recall." At trial, Ehret testified that he did function as a "manufacturer's rep" for Whiting.

In *Hansen*, the court noted that when analyzing whether testimony was equivocal, the court must consider the whole deposition, as the " 'determination *** depends upon an evaluation of all of his testimony, and not just a part of it.' " *Hansen*, 155 Ill. App. 3d at 481, quoting *McCormick v. Haan*, 20 Ill. 2d 75, 78, 169 N.E.2d 239 (1960). The record on appeal does not contain a full transcript of Ehret's deposition. Moreover, the fact that Ehret was not a "manufacturer's rep" for Whiting was not something peculiarly within the knowledge of Ehret.

Finally, Whiting argues that the uncontradicted evidence established that sales activities were only a small part (5%) of Installco's activities at Whiting. According to Whiting, at the time Installco terminated its relationship with Whiting, Installco already had been compensated adequately on a percentage basis for its sales activities. Whiting cites no authority in support of this contention.

The circuit court did not err in denying Whiting judgment on its affirmative defense of estoppel.

Accordingly, for the reasons set forth above, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

GREIMAN and KARNEZIS, JJ., concur.

---

[4]The Act defines "sales representative" as "a person who contracts with a principal to solicit orders and who is compensated, in whole or in part, by commission, but shall not include one who places orders or purchases for his own account for resale or one who qualifies as an employee of the principal pursuant to the Illinois Wage Payment and Collection Act." 820 ILCS 120/1(4) (West 2000).