# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Ringgold Capital IV, LLC v. Finley*, 2013 IL App (1st) 121702

---

| | |
|---|---|
| Appellate Court Caption | RINGGOLD CAPITAL IV, LLC, as Assignee of OLD SECOND NATIONAL BANK, Plaintiff-Appellant, v. MICHAEL FINLEY, Defendant-Appellee, (ATTACK PROPERTIES, LLC; SOMERCOR 504, INC.; UNITED STATES SMALL BUSINESS ADMINISTRATION; A.T.T.A.C.K. ATHLETICS, INC.; TIMOTHY S. GROVER; UNKNOWN OWNERS; and NONRECORD CLAIMANTS, Defendants.) |
| District & No. | First District, Third Division<br>Docket No. 1-12-1702 |
| Filed | June 19, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court properly dismissed with prejudice plaintiff's claims against defendant for the breach of his guaranty of a construction loan, reformation of the guaranty, enforcement of the reformed guaranty and fraudulent misrepresentation, since the guaranty unambiguously stated that defendant guaranteed a loan dated July 27, 2007, but the actual loan was dated August 24, 2007, resort to parol evidence was unnecessary, the binding judicial admission that defendant would guarantee the July 27 loan precluded reformation or enforcement of a reformed guaranty, and no scheme or device by defendant to defraud the lender was alleged. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CH-41352; the Hon. Laura C. Liu, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Barack Ferrazzano Kirschbaum & Nagelberg LLP, of Chicago (James R. Vogler, Brandon C. Prosansky, and John C. deMoulpied, of counsel), for appellant. |

Greenberg Traurig, LLP, of Chicago (Paul T. Fox and James P. Madigan, of counsel), for appellee.

Panel        JUSTICE PIERCE delivered the judgment of the court, with opinion. Justices Sterba and Hyman concurred in the judgment and opinion.

## OPINION

¶ 1        Old Second National Bank (the Bank) agreed to finance the construction of an $8.1 million athletic training facility to be developed by ATTACK Properties, LLC (Attack Properties or Borrower), Timothy Grover (Grover), and A.T.T.A.C.K. Athletics, Inc. (Attack Athletics), Attack Properties' parent company. The loan was secured by a mortgage and note along with unlimited guaranties executed by Attack Athletics and Grover and a limited personal guaranty executed by defendant Michael Finley (Finley) not to exceed $2 million. The mortgage went into default, causing the Bank to file a foreclosure action against the property and civil actions against Grover and Attack Athletics on their unlimited guaranties and, separately, against Finley on his limited guaranty. The trial court dismissed the claims against Finley for failure to state a cause of action pursuant to section 2-615 of the Code of Civil Procedure (Code). 735 ILCS 5/2-615 (West 2008).

¶ 2        The circuit court entered an agreed order pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010), allowing an immediate appeal. The Bank timely filed a notice of appeal. Subsequently, on June 29, 2012, the Bank assigned its interest in the Finley guaranty to Ringgold Capital IV, LLC (Ringgold). On August 7, 2012, Ringgold's motion to substitute as real party in interest on appeal was granted.

¶ 3        On appeal, Ringgold contends the circuit court erred in dismissing with prejudice its claims against Finley alleging breach of guaranty (count V), reformation of the guaranty (count VI), enforcement of the reformed guaranty (count VII) and fraudulent misrepresentation (count VIII). Ringgold argues that because the Finley guaranty is ambiguous, the court was required to look outside the four corners of the guaranty to examine the context of the complete agreement and that the court erred in finding the Bank failed to adequately plead facts sufficient to warrant reformation of the guaranty; Ringgold also argues the Bank sufficiently pled the existence of a mistake to warrant reformation and whether fraudulent misrepresentation was adequately pled against Finley.

¶ 4                      BACKGROUND

¶ 5 Relevant to its claims against Finley, the Bank alleged the following prefatory facts in its second amended verified complaint: In May 2007, Attack Properties and Grover sought a loan, characterized in its complaint as the "Facility Loan," to purchase and develop a training facility described as the "Attack Training Facility." In support of the loan proposal, Attack Athletics and Timothy Grover, a personal trainer and owner of Attack, executed unlimited guaranties with the Bank. The Bank rejected the initial proposal citing inadequate guaranties. Plaintiff alleged that Grover arranged for Finley, a client of Attack, to serve as an additional limited guarantor of the note. Plaintiff alleged that in June 2007, Finley, through his "sophisticated" counsel, and the Bank negotiated the terms of his limited personal guaranty. The Bank drafted the limited guaranty for review by Finley's attorneys. Grover and Attack Athletics guaranteed "any indebtedness [Attack Properties] might incur at any time to [the Bank]." Finley's guaranty, unlike the guaranties of Grover or Attack, would be limited in amount and would "guarantee only the indebtedness incurred under the Facility Loan." Plaintiff alleged, on information and belief, that Finley made representations that he was "guarantying the Facility Loan and its payment" and he provided personal financial statements to the Bank as evidence of his ability to honor his guaranty. Thereafter, with the additional proposed guaranty of Finley, the Bank's loan committee approved the loan. On July 5, 2007, the Bank sent Grover a confirmation letter which specifically stated the loan was conditioned on the Finley guaranty. The Bank alleged, on information and belief, that Finley was aware of the terms of the confirmation letter sent to Grover; he intended to execute the limited guaranty of the indebtedness created under the Facility Loan and he intended to induce the Bank to make the loan in reliance thereon. The Bank further alleged there were no other proposed loans pending between the Bank and Attack.

¶ 6 In mid-June, 2007, after negotiation and modifications were made, the Bank sent Finley's attorneys the agreed-upon guaranty that, as alleged, "guarantees to [Bank] the prompt and full payment and performance of the 'Indebtedness' described." Because of Finley's travel schedule, on July 18, 2007, the Bank provided Finley with the final guaranty and requested that it be executed before the scheduled July 27, 2007 loan closing date. Finley returned the executed guaranty on August 3, 2007. Due to certain environmental issues, the loan was not made on July 27. There is no allegation the Bank communicated with Finley about the failed closing or that there were any further discussions between them from July 27 and August 3.

¶ 7 The Facility Loan was made on August 24, 2007 and memorialized in a note and mortgage bearing the same date. However, the Finley guaranty was never changed to reflect the date of the loan: August 24. As a result, the complaint alleged the guaranty set forth the indebtedness to be guaranteed as: "the debt, liability, and obligation under [*sic*] incurred under that certain loan agreement between [Bank] and Attack Properties, LLC dated July 27, 2007." The "loan agreement" was not otherwise described or defined in the Finley guaranty or elsewhere. Finley is alleged to have understood he guaranteed the "Facility Loan"; the Bank intended the guaranty to apply to the debt created under the "Facility Loan"; Finley knew the Bank relied on the guaranty to induce it to make the loan; and Finley knew the closing did not take place on July 27.

¶ 8 Finley provided the Bank with updated financial information after the loan was made. From August 3 to the date of default, it was alleged, Finley never advised the Bank that he

did not intend to guaranty the indebtedness under the Facility Loan.

¶ 9   The borrower defaulted on the mortgage and an action for foreclosure and other relief was filed against the borrower and against Finley, as guarantor. In September 2010, the Bank filed a verified complaint alleging a claim against Finley under the August 3 limited guaranty. The Bank filed a first amended verified complaint alleging two claims against Finley: breach of guaranty and reformation. In the first verified amended pleading the Bank admitted there was no loan agreement dated July 27, 2007. Finley moved to dismiss the first amended verified complaint, which was granted. Plaintiff filed a second amended verified complaint alleging the following claims against Finley: breach of guaranty (count V), reformation of the guaranty (count VI), enforcement of the reformed guaranty (count VII) and fraudulent misrepresentation (count VIII). On Finley's motion, the trial court dismissed each of these claims with prejudice for failing to state a cause of action pursuant to section 2-615 of the Code. 735 ILCS 5/2-615 (West 2008).

¶ 10                                ANALYSIS

¶ 11   On appeal, assignee Ringgold contends the circuit court erred in granting Finley's section 2-615 motion to dismiss each of the causes of action alleged in the second amended verified complaint. A section 2-615 motion to dismiss challenges the legal sufficiency of a complaint based on defects apparent on its face. *Beacham v. Walker*, 231 Ill. 2d 51, 57 (2008). When the legal sufficiency of a complaint is challenged by a motion to dismiss pursuant to section 2-615, all well-pleaded facts in the complaint are taken as true and a reviewing court must determine whether the allegations of the complaint, construed in a light most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief may be granted. *Bell v. Hutsell*, 2011 IL 110724, ¶ 9. Thus, a cause of action should not be dismissed pursuant to section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery. *Tedrick v. Community Resource Center, Inc.*, 235 Ill. 2d 155, 161 (2009); *Brown-Seydel v. Mehta*, 281 Ill. App. 3d 365, 368 (1996). We review *de novo* the trial court's dismissal of these claims pursuant to section 2-615 of the Civil Code of Procedure. *Platinum Partners Value Arbitrage Fund, Ltd. Partnership v. Chicago Board Options Exchange*, 2012 IL App (1st) 112903, ¶ 12.

¶ 12   Viewing the claims alleged in the second amended verified complaint in the light most favorable to plaintiff, taking all well-pleaded facts as true and drawing all reasonable inferences therefrom in favor of plaintiff, we find the trial court was correct in holding that plaintiff's second amended verified complaint failed to state a claim in counts V, VI, VII and VIII. We address the counts and pertinent arguments *seriatim*.

¶ 13                     I. Count V–Breach of Guaranty

¶ 14   Plaintiff first argues that the circuit court improperly dismissed its breach of guaranty claim finding the guaranty term "Indebtedness" was unambiguously defined in terms of a nonexistent July 27, 2007, loan agreement between the Bank and the borrower. Plaintiff contends this finding was erroneous for two reasons. First, the circuit court considered only the four corners of the guaranty itself, without taking into consideration the entire agreement

between the parties reflected in loan documents related to the Facility Loan as referenced in the integration clause. Second, an intrinsic ambiguity is evident on the face of the guaranty itself. We discuss each allegation in turn.

¶ 15    The statute of frauds provides that a promise to guaranty the debt of another is unenforceable unless the promise is in writing and signed by the parties against whom judgment is sought. 740 ILCS 80/1 (West 2006). *Rosewood Care Center, Inc. v. Caterpillar, Inc.*, 226 Ill. 2d 559, 567-68 (2007). The requirement of a written agreement to enforce a guaranty is due to the " 'temptation for a promisee, in a case where the real debtor has proved insolvent or unable to pay, to enlarge the scope of the promise, or to torture mere words of encouragement and confidence into an absolute promise.' " *Id*. at 568 (quoting *Davis v. Patrick*, 141 U.S. 479, 487-88 (1891)). The policy underlying the statute of frauds provides that greater protection should be afforded to the promisor when the debt is incurred after the promise to guarantee is made as the promisor who agrees to guarantee a debt that has not yet arisen may be exposed to limitless liability. *Id*. at 569 (citing *Rosewood Care Center, Inc. v. Caterpillar, Inc.*, 366 Ill. App. 3d 730, 736 (2006) (Lytton, J., specially concurring)).

¶ 16    A guarantor's liability is determined from the guaranty contract, which is interpreted by the general principles of contract construction. *Du Quoin State Bank v. Daulby*, 115 Ill. App. 3d 183, 185 (1983). A guarantor is a favorite of the law, and when construing his liability, the court accords the guarantor the benefit of any doubts that may arise from the language of the contract. *Schiff v. Continental National Bank & Trust Co.*, 255 Ill. App. 333, 340 (1930). The court does not extend by implication, construction or presumption liability beyond the precise terms of the contract. *Id*. A guarantor is only liable for that which he has guaranteed. *Riley Acquisitions, Inc. v. Drexler*, 408 Ill. App. 3d 397, 403 (2011). Guaranty agreements are strictly construed in favor of the guarantor, especially when the guaranty agreement is prepared by the creditor. *Id*. Where a guaranty is unequivocal, it must be construed according to the terms and language used, as it is presumed the parties meant what the language imports. *Farmers State Bank v. Doering*, 80 Ill. App. 3d 959, 961 (1980).

¶ 17    The guaranty at issue states, in pertinent part:

"to induce [the Bank] at any time or from time to time to make loans or extend other accommodations to [Borrower] or to engage in other transactions with [Borrower], Finley guarantees to Lender the prompt and full payment and performance of the debt, liability, and obligation under [*sic*] incurred under *that certain loan agreement between Old Second National Bank and Attack Properties, LLC dated July 27, 2007 all such debts, liabilities and obligations being hereinafter collectively referred to as the 'Indebtedness*.' " (Emphasis added.)

¶ 18    The parties dispute the meaning of this provision of the guaranty. Plaintiff asserts that although the limited guaranty references a certain loan agreement dated July 27, 2007, Finley in fact intended to guarantee the Facility Loan made on August 24, 2007, thereby establishing liability for the debt arising from the August 24 loan. Plaintiff argues that although the Facility Loan did not close as expected on July 27, the integration clause in the guaranty referenced related loan documentation, and therefore, Finley was guaranteeing the loan that was documented, the Facility Loan, not a specific July 27, 2007 loan. Finley contends the

-5-

guaranty reflects his agreement: he agreed to guarantee a loan between the Bank and Attack Properties dated July 27, 2007.

¶ 19       When parties dispute the meaning of a contract provision, the initial question is whether the contract is ambiguous. *Hillenbrand v. Meyer Medical Group, S.C.*, 288 Ill. App. 3d 871, 875-76 (1997). An ambiguity does not exist simply because the parties disagree as to the meaning of a contractual provision. *Id*. An ambiguity exists when the contractual provision contains language that is susceptible to more than one reasonable interpretation. *Id*. If, after review and consideration of the language of the agreement, a court determines that a provision is ambiguous the court will then look beyond the agreement to ascertain the intent of the parties. *Id*. If there is no ambiguity, parol evidence is not permitted to alter the contract. *Owens v. McDermott, Will & Emery*, 316 Ill. App. 3d 340, 349 (2000). Importantly, "[t]he contentions of the parties to [a] contract are not the criterion which should guide a court in determining whether the written contract is a full expression of the agreement of the parties. The court must determine this from the writing itself." *Castle v. Powell*, 261 Ill. App. 132, 141 (1931). "If it imports on its face to be a complete expression of the whole agreement,–that is, contains such language as imports a complete legal obligation,–it is to be presumed that the parties introduced into it every material item and term, and parol evidence cannot be admitted to add another term to the agreement although the writing contains nothing on the particular term to which the parol evidence is directed." *Armstrong Paint & Varnish Works v. Continental Can Co.*, 301 Ill. 102, 106 (1922).

¶ 20       At the forefront, we note that plaintiff's first amended verified complaint alleged Finley intended to guarantee obligations created under a July 27 loan agreement that admittedly did not occur and, on repleading, the verified allegations changed to generally state Finley intended to guarantee the Facility Loan regardless of when the loan was made. Plaintiff is bound by the judicial admission contained in its first amended verified complaint. 735 ILCS 5/2-605(a) (West 2010) ("Verified allegations do not constitute evidence except by way of admission."). " 'A party cannot create a factual dispute by contradicting a previously made judicial admission.' " *Crittenden v. Cook County Comm'n on Human Rights*, 2012 IL App (1st) 112437, ¶ 45 (quoting *Burns v. Michelotti*, 237 Ill. App. 3d 923, 932 (1992)). As such, plaintiff cannot plead reconfigured facts to expand defendant's agreement to encompass the August 24 loan agreement.

¶ 21       Despite plaintiff's efforts to establish an ambiguity through its second amended verified complaint, the guaranty was attached as an exhibit to the verified complaint. If any conflicts exist between the pleadings and the exhibit, the exhibit controls. *Gagnon v. Schickel*, 2012 IL App (1st) 120645, ¶ 18 (when an instrument is attached to a complaint as an exhibit, it constitutes part of the pleading and where a conflict arises between the allegations and the exhibit, the exhibit controls).

¶ 22       In addition to being held to its judicial admission, plaintiff's argument fails because the guaranty at issue is unambiguous. Plaintiff contends that the intention of the parties was for Finley to guarantee the Facility Loan, regardless of the loan closing date, as evidenced by the use of the term "that certain loan agreement." However, this argument directly conflicts with the express language of the limited guaranty and judicial admissions contained in the first verified complaint. Although plaintiff drafted the guaranty, there is no reference to the term

"Facility Note" or "Facility Loan" or the purpose for which the loan agreement was made. Thus, to determine the extent of Finley's liability, the guaranty directs one to documents created "under that *certain* loan agreement dated July 27, 2007" to ascertain what obligations Finley undertook. (Emphasis added.)

¶ 23    The word "certain" carries considerable weight in its own right. Black's Law Dictionary defines "certain" as "[a]scertained; precise; *** clearly known; unambiguous; or, in law, capable of being identified or made known, without liability to mistake or ambiguity, from data already given. Free from doubt." Black's Law Dictionary 154 (6th ed. 1990). By using the word "certain," the lender identified and made known precisely, without mistake or ambiguity, free from doubt, that the loan agreement dated July 27 was the agreement Finley obligated himself to guarantee. Plaintiff made the word "certain" part of the guaranty, making it integral to its decision to lend money to its borrower. Since there is no mention of either the Facility Note or Facility Loan in the guaranty, we cannot find an ambiguity and resort to extrinsic evidence to explain or understand either term.

¶ 24    In using language that clearly indicates defendant agreed to guarantee a debt incurred under a certain loan dated July 27, 2007, the parties defined the indebtedness and evidenced an intention to limit the guarantee to a certain loan of a certain date. Surely the creditor could have chosen broader language, as it did in the guaranty executed by Grover and Attack, but it did not.[1] When compared to the more expansive language used in the Grover and Attack unlimited guaranties, this more restrictive language evidences an intent to narrow the scope of Finley's limited guaranty. *Clarendon America Insurance Co. v. 69 West Washington Management, LLC*, 374 Ill. App. 3d 580, 589 (2007) ("There is a strong presumption against provisions that easily could have been included in the contract but were not." (Internal quotation marks omitted.)). "When parties sign a memorandum expressing all the terms essential to a complete agreement they are to be protected against the doubtful veracity of the interested witnesses and the uncertain memory of disinterested witnesses concerning the terms of their agreement, and the only way in which they can be so protected is by holding each of them conclusively bound by the terms of the agreement as expressed in the writing." *Armstrong Paint & Varnish Works v. Continental Can Co.*, 301 Ill. 102, 106 (1922).

¶ 25    Plaintiff further argues the term "related loan documents" used in the integration clause creates an ambiguity.[2] However, this argument is fatal to plaintiff's contention that parol evidence should be allowed to construe this contract. The fact there is an integration clause in the instant guaranty precludes favorable resolution of plaintiff's position. Our supreme court has held that the existence of an integration clause in a facially unambiguous agreement

---

[1]The Grover and Attack guaranties provide, *inter alia*, that Grover and Attack "absolutely and unconditionally guarantee[ ] to Lender the prompt and full payment and performance of each and every debt, liability, and obligation of every type and description which Borrower may now or at any time hereafter owe to Lender."

[2]The integration clause provides, *inter alia*, "This guaranty and any related loan documents represent the complete agreement between [Finley] and Lender pertaining to the terms and conditions of those documents."

makes it improper to consider parol evidence, otherwise known as the provisional admission approach to contract interpretation. *Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill. 2d 457, 464-65 (1999). The long-standing rationale for prohibiting parol evidence where the agreement is facially unambiguous applies here. Lenders require certainty that written agreements will be honored and not easily avoided by consideration of extrinsic evidence. Were we to accept plaintiff's position, the certainty necessary for the transaction of commercial lending would be thrown into complete chaos and guarantors would be quick to claim the plain reading of their guaranty should be ignored and parol evidence allowed to absolve them of liability. The time and expense routinely expended in documentation of commercial lending transactions supports the conclusion that this agreement reflects the intent of the parties. Guaranty agreements that were once embodied in a few paragraphs on a single page (see *Michaelsen v. R.E. Doonan*, 259 Ill. App. 337 (1930)) now routinely consist of multiple paragraphs spread over several pages evidencing an attempt to address every possible contingency that may occur to either establish or defeat liability thereunder. Absent ambiguity, a contrary finding in this case would not be well received in the financial community. Plaintiff is attempting to rewrite the guaranty to include terms favorable to its interest, terms that are materially different from the unambiguous language embodied in the guaranty. While it is entirely possible plaintiff's contentions regarding the scope of Finley's commitment are correct, the executed guaranty does not reflect this intention and Finley's liability will not be extended by construction or implication. *Farmers State Bank v. Doering*, 80 Ill. App. 3d 959, 961 (1980); *Michaelsen v. R.E. Doonan*, 259 Ill. App. 337, 340-41 (1930).

¶ 26    Plaintiff argues an inherent ambiguity exists warranting reversal. Defendant contends plaintiff only argued the existence of an extrinsic ambiguity in the circuit court, and consequently, plaintiff has forfeited this argument on appeal. A review of the record on appeal reveals sufficient argument in the circuit court addressing whether there are inherent ambiguities in the agreement to warrant discussion here.

¶ 27    Arguing the document is inherently ambiguous, plaintiff contends the guaranty was an inducement to extend the loan to Attack Properties and, returning to the integration clause and the term "related loan documents," plaintiff argues this term is ambiguous because it can reasonably be argued this relates to the Facility Loan made on August 24. Plaintiff drafted the document and any ambiguity is held against it. *Murphy v. Peterson*, 129 Ill. App. 3d 952, 955 (1984). However, there is nothing ambiguous in these provisions: in context, the inducement language reflects the willingness of the Bank to make a loan because of Finley's limited guaranty and the recognition the guaranty relates to a loan dated July 27. As previously noted, there is no reference in the guaranty to future loans or the purpose of any loan, so the language used refers to the certain loan which precisely identified the debt being guaranteed. As evidenced by the unlimited guaranties executed by Grover and Attack Properties, plaintiff was capable of drafting the guaranty broadly to include future advances. Also, in the circuit court, plaintiff stated this was the only loan ever discussed or made to the borrower and the purpose of using July 27 to identify the loan agreement Finley guaranteed was "to distinguish it from the much more general guaranty that Mr. Grover and Attack Properties [*sic*] had provided, which provided for any indebtedness to be guaranteed at any

time in the future or any other time." Plaintiff cannot have it both ways: it cannot ask that a reasonable inference be drawn to support a finding that the parties intended to guaranty obligations other than those incurred under that certain loan agreement of July 27 and then admit that this specific verbiage was used to limit the agreement to the anticipated July 27 loan. Further, contrary to plaintiff's position, we do not find the term "related loan documents" to be an express incorporation of the August 24 loan documents into this guaranty. In context, the term is referencing the only loan precisely identified by date and defined as the indebtedness guaranteed. Again, plaintiff goes outside the document and resorts to extrinsic matters in order to create ambiguity where none exists.

¶ 28    Clearly, the terms of the guaranty are not ambiguous and, therefore, resort to parol evidence is unnecessary. The guaranty in this case clearly referred to the July 27 loan agreement and not to another agreement made on some later date. Consideration of extrinsic evidence would add to and materially change the guaranty as written. The circuit court properly dismissed this count with prejudice.

¶ 29                II. Counts VI and VII–Reformation and Enforcement
                        of the Reformed Guaranty

¶ 30    In count VI, plaintiff sought reformation of the guaranty alleging, in the alternative, that a variance exists between the agreement of the parties and the express guaranty. Plaintiff alleged that one of two events occurred such to require reformation of the written guaranty: (1) the parties made a mutual mistake in reducing the oral agreement to writing; or (2) the Bank made a unilateral mistake in preparing the document and Finley committed fraud in concealing the defect (the July 27, 2007 loan) when he delivered the guaranty. Plaintiff alleged that the mistake made was its failure to change the July 27, 2007 date to August 24, 2007 when the loan was made. Plaintiff alleged that both parties intended for the guaranteed "Indebtedness" to arise under the "Facility Loan," not specifically "that certain loan agreement *** dated July 27, 2007."

¶ 31    An action for reformation is in essence an action to change a written agreement to conform the intention of the parties and the agreement between them. *Schivarelli v. Chicago Transit Authority*, 355 Ill. App. 3d 93, 99-100 (2005). To state a cause of action for reformation of a contract, a plaintiff must allege: (1) the identity of the parties and the existence and substance of an agreement; (2) that the parties agreed to reduce their agreement to writing; (3) the substance of the written agreement; (4) that a variance exists between the parties' original agreement and the writing; and (5) mutual mistake or some other basis for reformation. *Id.* at 100 (citing *Schaffner v. 514 West Grant Place Condominium Ass'n*, 324 Ill. App. 3d 1033, 1044 (2001)).

> "An action to reform a written agreement rests upon a theory that the parties came to an understanding, but in reducing it to writing, through mutual mistake, or through mistake of one side and fraud on the other, some provision agreed upon was omitted, and the action is to so change the instrument as written as to conform it to the contract agreed upon, by inserting the provisions omitted or striking out the one inserted by mutual mistake." (Internal quotation marks omitted.) *Id.* (quoting *Suburban Bank of Hoffman-*

*Schaumburg v. Bousis*, 144 Ill. 2d 51, 58-59 (1991), quoting *Harley v. Magnolia Petroleum Co.*, 378 Ill. 19, 28 (1941)).

We presume that a written instrument conforms to the intention of the parties. *La Salle National Bank of Chicago v. American Insurance Co.*, 14 Ill. App. 3d 1027 (1973).

¶ 32    There is no question that plaintiff sufficiently alleged the identity of the parties and the existence of an agreement, that the parties reduced their agreement to writing and the substance of the written agreement as required. However, plaintiff has not sufficiently pled a variance between the original agreement and the guaranty by mutual mistake or unilateral mistake coupled with fraud. See *Schivarelli*, 355 Ill. App. 3d at 99-100. The verified allegations make clear that no set of facts can be stated to support such an allegation.

¶ 33    The second amended verified complaint states the parties agreed on the terms of Finley's guaranty in late June 2007, at which time the plaintiff sent the final document to defendant for execution. Both parties understood and agreed the loan to be guaranteed would be made on July 27, and that understanding was recited in the guaranty. That the loan was not made on July 27 does not mean the document did not accurately reflect what was agreed to. There are no allegations that there were subsequent communications, agreements or acknowledgments that would change, alter or affect the original agreement between the Bank and Finley, despite the fact that the Bank knew that the loan was not made on July 27. There is nothing in the verified pleadings that allows a reasonable inference which indicates the parties agreed to anything concerning the loan that occurred on August 24, 2007. In short, the guaranty attached as an exhibit to the complaint reflects precisely what the parties agreed to, *i.e.*, that Finley would guarantee a July 27 loan. When an instrument is attached to a complaint as an exhibit, it constitutes part of the pleading and where a conflict arises between the allegations and the exhibit, the exhibit controls. *Gagnon v. Schickel*, 2012 IL App (1st) 120645, ¶ 18. Since the plaintiff is bound by the judicial admission that Finley intended to guarantee obligations created under a July 27 loan agreement, we find that reformation is not warranted. *Knauerhaze v. Nelson*, 361 Ill. App. 3d 538, 558 (2005). Finding the guaranty to be unambiguous, we will not, as plaintiff suggests, by implication or construction find the parties intended the guaranty to be applicable to a generalized "Facility Loan" or to a loan executed on a subsequent date, simply because plaintiff so pled, especially where plaintiff admitted that it was intended that Finley guarantee the July 27 loan. See *Wheeler-Dealer, Ltd. v. Christ*, 379 Ill. App. 3d 864, 869-70 (2008).

¶ 34    As such, we affirm the dismissal of plaintiff's reformation count. Since the reformation claim fails, count VII (enforcement of the reformed guaranty) was also properly dismissed by the circuit court as it is dependent on the success of a properly pled claim for reformation of the guaranty.

¶ 35                    III. Count VIII–Fraudulent Misrepresentation

¶ 36    Finally, plaintiff argues the circuit court erred in dismissing its cause of action for fraudulent misrepresentation, claiming it pled sufficient facts alleging Finley made false representations that he intended to guarantee the Facility Loan, he signed and delivered a guaranty he could negate and, in reliance thereon, plaintiff made the August 24 loan to Attack. Plaintiff argues that because Finley knew the loan did not close as scheduled on July

27 and he took no action to correct the document, his delivery of the guaranty to the Bank was misleading causing it to reasonably rely on Finley's representations in making the August 24 loan. Plaintiff argues it did not rely on the oral agreements outside of the guaranty; rather, it relied on representations made during discussions regarding guaranteeing the Facility Loan prior to the August 3 execution of the guaranty. Lastly, plaintiff contends that reasonable reliance is a question of fact and as such, this count was improperly dismissed at the pleading stage.

¶ 37    The elements of fraudulent misrepresentation are: (1) a false statement of material fact; (2) the defendant's knowledge or belief that the statement was false; (3) the defendant's intent that the statement induce the plaintiff to act or refrain from acting; (4) the plaintiff's justifiable reliance upon the truth of the statement; and (5) damages resulting from reliance on the statement. *Chatham Surgicore, Ltd. v. Health Care Service Corp.*, 356 Ill. App. 3d 795, 804 (2005). The reliance by the plaintiff must have been justifiable. *Neptuno Treuhand-Und Verwaltungsgesellschaft MBH v. Arbor*, 295 Ill. App. 3d 567, 571 (1998). The issue of reasonable reliance is not a *per se* question of fact. *Id*. at 575-76. Whether the plaintiff's own factual allegations establish that the alleged reliance was unreasonable as a matter of law, dismissal in accordance with section 2-615 of the Code is warranted. *Id*. In assessing whether reliance was justifiable, all facts known to the plaintiff and those facts plaintiff could have learned through the exercise of ordinary prudence must be taken into account. *Adler v. William Blair & Co.*, 271 Ill. App. 3d 117, 125 (1995).

¶ 38    Plaintiff has not stated a cause of action for fraudulent misrepresentation. The count as pled mixes averments reliant upon the signed guaranty and representations made prior to its execution. Taken in its best light, even if the Bank relied on statements Finley made during the course of negotiations as to what he would do in the future that were not reflected in the agreement, those representations regarding future events fail to state a cause of action for fraud. *Board of Trustees of the Illinois Municipal Retirement Fund v. First National Bank of Chicago*, 263 Ill. App. 3d 108, 114-15 (1994). A promise made to perform a future act while intending not to perform that act does not constitute actionable fraud, unless the false promise is part of a scheme or device to defraud another of their property. *Chatham Surgicore, Ltd. v. Health Care Service Corp.*, 356 Ill. App. 3d 795, 804 (2005). No such scheme or device to defraud has been pled. Therefore, plaintiff did not plead a cause of action for fraudulent misrepresentation and the circuit court properly dismissed this count.

¶ 39    Plaintiff has not sufficiently alleged justifiable reliance on any purported representation by Finley as to the indebtedness to which he would guarantee. The parties negotiated the terms of the guaranty at arm's length, with the assistance of counsel. The guaranty was not unlimited. Rather, the guaranty, drafted by the lender, provided that Finley intended to guarantee only a certain debt created on a specific date evidenced by loan documents executed in relation thereto. As we discussed at length, the agreement of the parties was that Finley would guarantee the July 27 loan, nothing more, nothing less. Any reliance on statements made by Finley during the course of negotiating the contract that conflict with the agreed-upon written terms, which the Bank concedes it drafted, could not have been a reasonable basis upon which to rely in making the August 24, 2007 loan.

¶ 40                    CONCLUSION

¶ 41        For the reasons state above, we affirm the decision of the circuit court dismissing counts V, VI, VII and VIII of plaintiff's second amended verified complaint with prejudice.

¶ 42        Affirmed.