# Illinois Official Reports

## Appellate Court

---

**Koenig & Strey GMAC Real Estate v. Renaissant 1000 South Michigan I, LP,**
**2016 IL App (1st) 161783**

---

Appellate Court
Caption

KOENIG & STREY GMAC REAL ESTATE, a Limited Liability
Company, Plaintiff, v. RENAISSANT 1000 SOUTH MICHIGAN I,
LP, an Illinois Limited Partnership; RENAISSANT 1000 SOUTH
MICHIGAN, LLC, an Illinois Limited Liability Company; FIRST
AMERICAN BANK; DeSTEFANO AND PARTNERS, LTD., an
Illinois Corporation; TRAINOR GLASS COMPANY, an Illinois
Corporation; CURTAIN WALL AND DESIGN CONSULTING
INCORPORATED, a Texas Corporation; and UNKNOWN
OWNERS, HEIRS, LEGATEES and NON-RECORD CLAIMANTS,
Defendants.—FIRST AMERICAN BANK, an Illinois Banking
Corporation, Plaintiff and Defendant-Appellee, v. RENAISSANT
1000 SOUTH MICHIGAN, LLC, an Illinois Limited Liability
Company; RENAISSANT 1000 SOUTH MICHIGAN I, LP, an
Illinois Limited Partnership; WARREN BARR; JAMES CARROLL;
JOHN BORKOWSKI; EDWARD BORKOWSKI; RICHARD
BORKOWSKI; CONTRACTORS LIEN SERVICES, INC.;
DeSTEFANO AND PARTNERS LTD.; TRAINOR GLASS
COMPANY; CURTAIN WALL AND DESIGN CONSULTING
INCORPORATED; KOENIG & STREY GMAC REAL ESTATE;
TISHMAN CONSTRUCTION CORPORATION OF ILLINOIS;
CHICAGO TITLE LAND AND TRUST COMPANY, as Trustee
Under Trust Number 1106328; 1000 SOUTH MICHIGAN AVENUE,
LLC; UNKNOWN OWNERS; and NON-RECORD CLAIMANTS,
Defendants (John Borkowski, Edward Borkowski, and Richard
Borkowski, Defendants-Appellants).

District & No.

First District, Sixth Division
Docket Nos. 1-16-1783, 1-16-0771 cons.

| | |
|---|---|
| Filed | November 23, 2016 |
| Rehearing denied | December 21, 2016 |

| | |
|---|---|
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 07-CH-27475, 08-CH-16304; the Hon. Robert J. Quinn and the Hon. Anthony Kyriakopoulos, Judges, presiding. |

| | |
|---|---|
| Judgment | Vacated and remanded with directions. |

| | |
|---|---|
| Counsel on Appeal | Gino L. DiVito, John M. Fitzgerald, and Ashley Crettol Insalaco, of Tabet DiVito & Rothstein, LLC, of Chicago, and Kenneth J. Nemec, Jr., William J. Hrabak, Jr., and Sara L. Spitler, of Goldstine, Skrodzki, Russian, Nemec & Hoff, Ltd., of Burr Ridge, for appellants.<br><br>John Robert Weiss, Rosanne Ciambrone, and Elinor Murarova, of Duane Morris LLP, of Chicago, for appellee. |

| | |
|---|---|
| Panel | PRESIDING JUSTICE HOFFMAN delivered the judgment of the court, with opinion.<br>Justices Rochford and Delort concurred in the judgment and opinion. |

**OPINION**

¶ 1    The defendants, John Borkowski, Edward Borkowski, and Richard Borkowski (collectively, the Borkowskis), appeal from a $18,421,241.04 judgment entered against them on a guaranty agreement which they executed in favor of the plaintiff, the First American Bank (Bank). They argue that the circuit court erred in (1) including postjudgment interest on the judgment entered against the underlying borrowers in the computation of the sums owed on their guaranty, (2) failing to require the Bank to apply the amount of its credit bid on the foreclosure sale of the borrowers' property to expenses and accrued interest before crediting principal, and (3) failing to grant a credit against their liability for the proceeds of a $4 million letter of credit drawn upon by the Bank on April 3, 2008. For the reasons that follow, we vacate the circuit court's judgment and remand this matter back to the circuit court with directions to recalculate the amounts due by the Borkowskis on their guaranty agreement consistent with the opinions expressed herein and enter judgment in favor of the Bank in that sum.

¶ 2    The Bank made two loans to Renaissant 1000 South Michigan, LLC (Renaissant) totaling $22,450,000, which were memorialized by a $16 million term land note and a $6,450,000 term

mezzanine note (collectively, the notes). The notes were secured by a mortgage on the property commonly known as 1000 South Michigan Avenue in Chicago (mortgage), an assignment of rents and leases, and a security agreement and financing statement. The Borkowskis, along with Warren Barr and John Carroll (collectively, the guarantors), jointly and severally, guaranteed the payment of certain specified sums owed to the Bank by Renaissant. The guaranty agreement provides, in relevant part, as follows:

> "Notwithstanding anything to the contrary contained in the foregoing, or in this Guaranty, the joint and several liability of Guarantors under this Agreement shall not exceed (a) for the principal portion of the Guaranteed Liabilities the sum of Seven Million and No/100 Dollars ($7,000,000.00) (The 'Guaranteed Principal Amount'), one hundred percent (100%) of the accrued and unpaid interest under the Notes, as well as one hundred percent (100%) of the late fees due under the Notes, (c) [*sic*] all Enforcement Costs, and (d) [*sic*] any Extraordinary Claim. The Guaranteed Principal Amount, all accrued and unpaid interest under the Note, all late fees, the Enforcement Costs, any Extraordinary Claim and any and all costs, losses, damages and reasonable attorney's fees incurred by the Lender in connection with or arising out of any Extraordinary Claim are collectively referred to as the 'Guaranteed Obligations.' "

The notes were renewed from time to time. With the third extension of the notes, the Bank required Renaissant to post, as additional collateral, a $4 million irrevocable letter of credit naming the Bank as the beneficiary. With the sixth extension, the Renaissant 1000 South Michigan I, LP was added as a borrower (Renaissant and Renaissant 1000 South Michigan I, LP collectively, the borrowers). The guarantors reaffirmed the guaranty agreement in writing with each extension of the notes.

¶ 3        Pursuant to the final extensions, the maturity date of the notes was March 31, 2008. When the borrowers defaulted, the Bank filed the instant action. In count I of its complaint, the Bank sought to foreclose upon the Mortgage. In count II, the Bank sought a judgment against the guarantors.

¶ 4        On the Bank's motion for summary judgment on count I of its complaint, the circuit court entered a judgment order of foreclosure and sale on January 26, 2009. In that order, the circuit court found that, as of April 21, 2008, there was due and owing to the bank:

> "• $22,443,427.61, representing the principal amount due on the Notes; plus
>
> • $285,371.84, representing interest accrued on the Notes from March 31, 2008, to April 21, 2008;
>
> • Less $4,000,000.00 representing the proceeds of a letter of credit drawn by [the Bank], which will be applied as of the date of entry of [the] order;
>
> • for a total of $18,728,799.45."

The court also found that per diem interest under the notes would accrue after April 21, 2008, at the rate of $13,878.58.

¶ 5        On April 23, 2009, pursuant to the Bank's motion, the circuit court entered an order finding that the guarantors are liable to the Bank on the guaranty agreement, "the amount of which shall be determined by the Court after confirmation of the sale of the Mortgaged Premises."

¶ 6        The initial judicial sale of the mortgaged property took place on March 17, 2009. The Bank was the successful bidder at that sale with a credit bid of $12 million. However, the circuit court declined to approve the sale, sustaining the objection of the Borkowskis who argued that

the Bank's bid was unconscionably low. On July 27, 2010, a second judicial sale of the property was held, and the Bank was again the highest bidder with a credit bid of $11.3 million. On August 26, 2010, the matter came before the circuit court on the Bank's motion to confirm the July 27, 2010, sale. The Bank advised the court that it would stand on its original bid of $12 million. Nevertheless, the Borkowskis again objected to confirmation of the sale on unconscionability grounds. The circuit court sustained the objection and declined to confirm the sale. The Bank appealed, and this court reversed the circuit court's order and remanded the matter with directions to approve the sale. *Koenig & Strey GMAC Real Estate v. Renaissant 1000 South Michigan I, LP*, 2011 IL App (1st) 103036-U, ¶ 38.

¶ 7 On remand, the circuit court entered an order on August 30, 2012, confirming the sale to the Bank. In that order, the circuit court reserved for determination at a later date the amount of the deficiency judgment to be entered against the borrowers and the amounts due under the guaranty agreement.

¶ 8 On October 25, 2012, the Bank filed a motion seeking a determination of the amounts due under the notes following the foreclosure sale, the amount of the deficiency judgment, and the amounts due under the guaranty agreement. The Bank alleged that it was entitled to a deficiency judgment against the borrowers in the amount of $17,412,934.60 and a judgment against the guarantors in the same amount. Included in the amount claimed was $6,075,298.45 in principal remaining due on the notes, $10,158,844.84 in interest, and $1,178,791.30 for expenses. Following discovery, a hearing on the Bank's motion was held on September 14, 2014, and the circuit court entered its order and memorandum opinion on October 21, 2014. In that order, the circuit court addressed three issues, namely: (1) whether the Bank correctly applied the proceeds of the $4 million letter of credit on January 26, 2009; (2) whether the proceeds of the letter of credit should be applied against the "Guaranteed Principal Amount" due by the guarantors; and (3) whether the Bank had discretion in the application of its credit bid to the principal remaining due under the notes before first applying that sum to accrued interest and expenses. The circuit court found that the letter of credit was not delivered by the guarantors in their individual capacity and, therefore, the Bank is not required to credit the proceeds against the "Guaranteed Principal Amount" due by them under the guaranty agreement; the Bank properly applied the proceeds of the letter of credit against the amounts due under the notes on January 26, 2009; and the Bank had discretion in the application of its credit bid and did not breach any covenant of good faith and fair dealing by applying the bid sum to principal due under the notes before accrued interest. Based upon its findings, the circuit court ordered the Bank to submit a "new computation" of the amounts due under the guaranty agreement.

¶ 9 The Bank submitted a revised calculation of $16,421,849.60, exclusive of attorney fees, as the amount due by the guarantors. The Borkowskis objected to the inclusion in the calculation of postjudgment interest that accrued after January 26, 2009, the date of the entry of the judgment order of foreclosure and sale. On December 11, 2014, the circuit court entered an order, finding that the guarantors are not liable for postjudgment interest owed by the borrowers, accruing after January 26, 2009. Thereafter, the Bank filed a motion to reconsider that order. On September 16, 2015, the circuit court entered an order which, in addition to other relief, granted the Bank's motion to reconsider, finding that the guarantors are liable for the payment of postjudgment interest owed by the borrowers.

- 4 -

¶ 10 On February 18, 2016, the circuit court found that the liability of the Borkowskis under the guaranty agreement is $18,421,241.04, consisting of $7 million for principal, $10,882,462.84 for accrued interest, and $538,778.18 for expenses. On March 17, 2016, the Borkowskis filed a notice of appeal, which was docketed in this court as No. 1-16-0771. On June 28, 2016, the circuit court entered an order pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016), finding that there is no just reason to delay either enforcement or appeal from the judgment entered against the Borkowskis on February 18, 2016. In addition, the circuit court amended its order of February 18, 2016, to provide that the joint and several liability of *all of the guarantors*, including the Borkowskis, to the Bank under the guaranty agreement is $18,421,241.04. On June 29, 2016, the Borkowskis filed a second notice of appeal, which was docketed in this court as No. 1-16-1783. Thereafter, this court consolidated the Borkowskis' two appeals.

¶ 11 For their first assignment of error, the Borkowskis argue that the circuit court erred in including postjudgment interest due by the borrowers in the judgment entered against them on the guaranty agreement. They assert that, although the guaranty agreement provides that they are liable for the accrued and unpaid interest on the notes, there is no provision within the document that renders them liable for the statutory postjudgment interest on the foreclosure judgment entered against the borrowers. We agree.

¶ 12 The liability of a guarantor is determined by the terms of the guaranty contract, which is interpreted by the application of general contract principles. *Ringgold Capital IV, LLC v. Finley*, 2013 IL App (1st) 121702, ¶ 16. In construing a contract, the primary objective is to give effect to the intentions of the parties at the time that the contract was made. *Owens v. McDermott, Will & Emery*, 316 Ill. App. 3d 340, 344 (2000). When the parties dispute the meaning of a contract, the initial question is whether the contract is ambiguous. *Ringgold*, 2013 IL App (1st) 121702, ¶ 19. Whether a contract is ambiguous is a question of law. *Owens*, 316 Ill. App. 3d at 348. If the contract is clear and unambiguous, the intent of the parties is determined solely from the plain language of the contract. *Id.* at 344.

¶ 13 Guided by these principles, we have examined the guaranty agreement and find that the provisions fixing the liability of the guarantors are not ambiguous. As noted earlier, the liability of the guarantors shall not exceed the sum of $7 million for principal owed on the notes, 100% of the accrued and unpaid *interest on the notes*, 100% of the late fees under the notes, enforcement costs, and any extraordinary claim. As guarantors, the liability of the Borkowskis under the guaranty agreement for the payment of interest is limited to 100% of the "accrued and unpaid interest under the Notes."

¶ 14 In support of the interest component in the circuit court's judgment against the Borkowskis, the Bank contends that "post-judgment interest is in fact interest on the amounts due under the Notes." We disagree.

¶ 15 Interest accruing on a note prior to the entry of a judgment is incident to the debt itself. Upon the entry of a judgment on a note, the debt is merged into the judgment, and the note ceases to exist. *Doerr v. Schmitt*, 375 Ill. 470, 471-72 (1941). Interest on a judgment is not part of the judgment; rather, it is purely statutory in origin. *Blakeslee's Storage Warehouses, Inc. v. City of Chicago*, 369 Ill. 480, 482-83 (1938); see also 735 ILCS 5/2-1303 (West 2008) ("Judgments recovered in any court shall draw interest at the rate of 9% per annum from the date of the judgment until satisfied ***.").

¶ 16    "A guarantor is only liable for that which he has guaranteed." *Ringgold*, 2013 IL App (1st) 121702, ¶ 16. When, as in this case, the terms of a guaranty contract are unambiguous, the liability of a guarantor cannot be extended by implication or construction beyond the terms of the guaranty contract. *Id.* The Borkowskis' liability for interest under the terms of the guaranty agreement is limited to accrued and unpaid interest under the notes. As postjudgment interest is purely statutory in origin and does not arise under the notes, the Borkowskis are not liable for the postjudgment interest owed by the borrowers accruing after the entry of the judgment order of foreclosure and sale entered on January 26, 2009.

¶ 17    The Borkowskis next argue that the proceeds of the $4 million letter of credit should have been applied to reduce their "Guaranteed Principal Amount" of $7 million under the guaranty agreement, rather than to the amounts due from the borrowers under the notes. Their argument in this regard appears to be based on the assertion that they were the source of the letter of credit. The Bank argues that the plain language of the letter of credit belies the argument that the Borkowskis were the applicants or that the letter of credit was delivered by them as collateral for the guaranty agreement. We agree with the Bank.

¶ 18    There are several contracts involved in a letter-of-credit transaction, including the contract between the issuer and its customer whereby the issuer agrees to issue the letter of credit to the beneficiary; the contract between the customer and the beneficiary, which is the agreement underlying the letter of credit; and the contract obligating the issuer to pay the beneficiary upon demand if the beneficiary complies with the conditions specified in the letter. *Mount Prospect State Bank v. Marine Midland Bank*, 121 Ill. App. 3d 295, 299 (1983). As a contract, a letter of credit is construed by applying the same general principles used in construing other written contracts. *Molter Corp. v. Amwest Surety Insurance Co.*, 267 Ill. App. 3d 718, 721 (1994).

¶ 19    The undisputed facts of this case establish that the issuance of the letter of credit was a requirement imposed upon Renaissant pursuant to the third amendment to the loan documents as consideration for the Bank's agreement to extend the maturity dates of the notes. The letter of credit states that it was issued by Fifth Third Bank by order of its clients, Renaissant 1000 South Michigan, LLC; Midwest Warehouse & Distribution Systems, Inc.; Bedford Motor Services, Inc.; and Logistic Resources, Inc. The Borkowskis are not mentioned in the letter of credit.

¶ 20    We find nothing ambiguous about the terms in the letter of credit. Fifth Third Bank issued the letter of credit on the order of its named clients, not the Borkowskis. It was posted with the Bank as a requirement placed upon the borrowers, not as a requirement placed upon the guarantors. We conclude, therefore, that when drawn upon, the $4 million in proceeds of the letter of credit were properly applied to the sums due by the borrowers under the notes.

¶ 21    Next, the Borkowskis argue that the circuit court erred in ordering the proceeds of the letter of credit be applied to the amounts due to the Bank as of January 26, 2009, the date of the entry of the judgment order of foreclosure and sale. They contend that the proceeds of the letter of credit should have been applied by the Bank on April 3, 2008, the date that it drew on the letter of credit. In response, the Bank argues that the date upon which the proceeds of the letter of credit were to be applied to the amount due to it from the borrowers was fixed in the judgment order of foreclosure and sale that was entered on January 26, 2009. It contends that, by reason of their failure to timely appeal from that order, the Borkowskis cannot seek review of that order in the context of this appeal. Again, we agree with the Bank.

¶ 22    The order of January 26, 2009, which provides that the proceeds of the letter of credit were to be applied to the sums owed to the Bank upon its entry, also contains the requisite language under Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) making the order immediately appealable. *JP Morgan Chase Bank v. Fankhauser*, 383 Ill. App. 3d 254, 260 (2008). The Borkowskis did not file a notice of appeal from that order within 30 days of its entry. Nevertheless, they argue that, because the order of January 26, 2009, did not address how the proceeds of the letter of credit were to be applied in calculating the sums due under the guaranty agreement, they are at liberty in this appeal to contest the propriety of fixing January 26, 2009, as the date that the proceeds were to be credited.

¶ 23    Under the guaranty agreement, the Borkowskis are liable for specified sums due by the borrowers to the bank under the terms of the notes and the mortgage. As we found earlier, the letter of credit was posted with the Bank as collateral for the obligations of the borrowers under the notes, and as a consequence, the proceeds of that letter were properly applied to the borrowers' outstanding liabilities. Therefore, the order that determined the date upon which the proceeds were to be applied to the sums due to the Bank by the borrowers also affected the liability of the guarantors. As the order of January 26, 2009, affected their liability as guarantors, the Borkowskis could have appealed from that order. Having failed to do so, they may not seek a review of that order in this appeal from a subsequent order entered in the same case. *Battaglia v. Battaglia*, 231 Ill. App. 3d 607, 615 (1992).

¶ 24    Finally, the Borkowskis argue that the Bank's credit bid should have been applied first to accrued interest due on the notes and enforcement costs before being applied to unpaid principal. The guaranty agreement is silent as to the manner in which the proceeds of a foreclosure sale are to be applied. As a consequence, the Borkowskis argue that the agreement is ambiguous and must be construed in their favor. They contend that, by applying the credit bid first to unpaid principal, the Bank maximized their liability as guarantors and, thereby, violated the covenant of good faith and fair dealing implied in the guaranty agreement.

¶ 25    The Bank asserts that, contrary to the Borkowskis' contention, it did not apply its credit bid first to the unpaid principal on the notes. Relying upon the provisions of section 4.11 of the mortgage, the Bank argues that its credit bid was properly applied first to enforcement costs and then applied to any unpaid principal. We agree.

¶ 26    Pursuant to the terms of the guaranty agreement, the Borkowskis guaranteed any and all indebtedness, obligations and liabilities of Renaissant arising out of or in connection with the notes as evidenced by, among other documents, the notes and the mortgage. The notes and the mortgage determine the manner of calculating Renaissant's obligations to the Bank. The liability of the Borkowskis for those obligations is determined by the provisions of the guaranty agreement. The guaranty agreement does not establish Renaissant's obligations, nor does it provide for the manner in which those obligations are calculated. The mortgage is the source of the Bank's right to foreclose, and it is also the instrument that provides the manner in which the proceeds of a foreclosure sale are to be distributed and applied.

¶ 27    The Bank's credit bid constitutes the proceeds of the foreclosure sale of the mortgaged property. Section 4.11 of the mortgage provides that the proceeds of a foreclosure sale shall be distributed and applied as follows:

        "(a) on account of all costs and expenses incident to the foreclosure proceedings ***;
        (b) all other items that, under the terms of this Mortgage, constitute secured indebtedness additional to that evidenced by the Notes, with interest thereon at the

applicable Default Interest Rate; (c) all principal and interest, together with any prepayment charge, remaining unpaid under the Notes, in the order of priority specified by the [Bank] in its sole and absolute discretion ***."

¶ 28    We need look no further than the terms of the mortgage to ascertain the agreed upon manner in which the Bank's credit bid was to be applied. See *American National Bank & Trust Co. of Chicago v. Mack*, 311 Ill. App. 3d 583, 588 (2000). The Bank was required, as it did, to apply its credit bid first to the cost and expenses incident to the foreclosure proceedings. The order of priority for the application of the remaining $10,968,065.10 to unpaid principal and interest was a matter left to the sole discretion of the Bank. The Bank's election to apply the excess sale proceeds to unpaid principal was a matter between the Bank and the borrowers pursuant to the terms of the mortgage. Any effect upon the guarantors would be governed by the terms of the guaranty agreement. Section 5(b) of the guaranty agreement provides that nothing contained in the document would prevent the Bank from suing on the notes or foreclosing upon the mortgage "or from exercising any other right thereunder." Consequently, the guarantors undertook the risk that, in the event of a foreclosure sale of the mortgaged property, the Bank would exercise its discretion under the Mortgage and apply any excess proceeds of a foreclosure sale to unpaid principal after the payment of expenses. By its expressed terms, the guaranty agreement did not prevent the Bank from exercising its rights under the mortgage, and the implied covenant of good faith and fair dealing cannot modify those express terms. *Bank One, Springfield v. Roscetti*, 309 Ill. App. 3d 1048, 1059-60 (1999). For these reasons we, like the circuit court, find no breach of the implied covenant of good faith and fair dealing of the guaranty agreement by reason of the Bank's application of the proceeds of its credit bid first to expenses incident to the foreclosure proceeding and the remainder to unpaid principal under the notes.

¶ 29    In summary, we find that the circuit court erred in including postjudgment interest owed by the borrowers accruing after January 26, 2009, in calculating the amounts due by the guarantors, including the Borkowskis, under the terms of the guaranty agreement. We find no error in the circuit court's conclusion that the proceeds of the letter of credit and the Bank's credit bid were properly applied. As a consequence, we vacate the judgment entered against the Borkowskis and the other guarantors, and remand this matter back to the circuit court with directions to recalculate the amount due by the Borkowskis and the other guarantors consistent with the opinions expressed herein and to enter judgment against them, jointly and severally, for that sum.

¶ 30    Vacated and remanded with directions.